THE STATE ex rel. ELLROY V. SELLECK v. GEORGE D. REYNOLDS et al., Judges St. Louis Court of Appeals.

**In Banc, July 10, 1913.**

1. **JURISDICTION: Court of Appeals.** Under the Constitution the St. Louis Court of Appeals has both appellate and original jurisdiction, but both are limited, and the Legislature cannot add to the powers named in the Constitution. It is not a common law court of general jurisdiction.

2. ————: ————: **Inherent Powers: Legislative Restriction: Disbarment of Attorneys.** Both the Supreme Court and the St. Louis Court of Appeals have the inherent power to protect

252 Mo.—24

themselves from imposition, either in contempt or disbarment proceedings, but a reasonable legislative restriction upon the exercise of that inherent power is to be upheld; and the statutes have placed restrictions upon the exercise of that power in disbarment·proceedings.

*Held*, by BROWN, J., dissenting, that the Court of Appeals has no inherent power to hear and determine proceedings to disbar attorneys, and that inherent power of courts does not and cannot exist in a republic founded upon a written constitution and written laws. Their powers are defined and limited by the Constitution, as are legislative and executive powers.

3. **DISBARMENT OF ATTORNEY: By Court of Appeals: Indictable Offense.** The St. Louis Court of Appeals cannot disbar an attorney from practicing law in the courts of this State, if the charge in the disbarment proceeding be for an indictable offense and no conviction is alleged. At most it can only suspend him until he be convicted or acquitted of the indictable offense in the proper trial court; if convicted within the·time prescribed by the statute, he is to be disbarred upon the record of conviction; if acquitted, the suspension is to be discontinued. These restrictions on the inherent powers of the Court of Appeals is found in Secs. 951-960, Revised Statutes 1909.

*Held*, by WOODSON, J., dissenting, with whom LAMM, C. J., and WALKER, J., concur, that the proceeding in the Court of Appeals to disbar the attorney on the ground that he has committed an indictable offense, is not a criminal proceeding, but a civil one, and hence Sec. 952, R. S. 1909, conferring jurisdiction upon said court to disbar an attorney, is not violative of those provisions of the Constitution which·provide that no person shall be prosecuted criminally except by indictment and information, etc.

4. ————: ————: ————: **Reasonable Restriction.** The restrictions upon the inherent power of the St. Louis Court of Appeals to disbar an attorney for an indictable offense, making it impossible for it to do so until such attorney be convicted in the proper trial court and then' making the record of such conviction conclusive of the facts, are reasonable and valid.

*Held*, by LAMM, C. J., dissenting, with whom WALKER, J., concurs, that the legislative restrictions on the inherent power of a court to disbar an attorney who has committed a felony, forbidding such disbarment until he has been convicted by trial before a jury and making his disbarment dependent upon such a conviction, are unreasonable and invalid.

5. ————: ————: ————: **Certiorari: Constitutional Ques-tion.** Where the Court of Appeals could not have entered judg-ment disbarring an attorney except by holding certain statutes to be void, its decree may be reviewed by *certiorari* in the Supreme Court, since the holding that the statute is an un-reasonable restriction upon its inherent powers and therefore invalid, involves a constitutional question.

## Certiorari.

RECORD AND JUDGMENT QUASHED.

*T. J. Rowe, John A. Talty* and *Thos. J. Rowe, Jr.,* for relator

(1) The St. Louis Court of Appeals is a court of limited and special jurisdiction and has no jurisdic-tion except such as is conferred upon it by the Con-stitution. (2) The jurisdiction of the St. Louis Court of Appeals in all matters except the issuance of ex-traordinary writs within the territory over which it has jurisdiction is solely and only appellate and it has no original jurisdiction in disbarment proceedings. (3) The St. Louis Court of Appeals had no jurisdic-tion in this case because the validity of Sec. 952, R. S. 1909, is drawn in question; and said court of appeals under the Constitution has no jurisdiction in cases wherein the validity of a statute is drawn in question. (4) The court of appeals has no power by either ex-pressed statute or implication to license attorneys at law and therefore has no power to disbar them. State ex rel. v. Mullins, 129 Mo. 237; State ex rel. v. Harbor, 129 Mo. 293; State ex rel. v. Laughlin, 73 Mo. 449. (5) Section 28, article 2, of the Constitution provides the right of trial by jury as heretofore enjoyed shall re-main inviolate, and by virtue of said constitutional provision plaintiff had a right to a trial by jury be-cause the right of an attorney to practice law is a valuable property right which cannot be taken from him except by due process of law. State ex rel. v. Mc-

Elhinney, 241 Mo. 606. (6) The original, as well as the appellate, jurisdiction of the St. Louis Court of Appeals is confined to those cases the subject-matter of which is not within the appellate jurisdiction of the Supreme Court. State ex rel. v. Rombauer, 101 Mo. 449; State ex rel. v. Allen, 45 Mo. App. 551; State ex rel. v. Nortoni, 201 Mo. 1.

*Walter H. Saunders* for respondents.

(1) In an original proceeding in the courts of appeal, the suggestion of a constitutional question does not oust said court of jurisdiction, because there is no provision for the transfer of such cause to the Supreme Court, and the prosecution of such cause there; the result, therefore, would be that the cause upon transfer would terminate, and the suggested constitutional question could never be decided in that proceeding. Furthermore, after the cause is transferred and terminates it might be refiled either in the Supreme Court or any other court having jurisdiction, and then the constitutional question might not be raised. To adopt such a rule would cause endless inconvenience and delays and place a premium upon frivolous constitutional questions and dilatory tactics. In original proceedings, the constitutional question can be reviewed only by certificate or *certiorari*. But assuming, which we deny, that a constitutional question, if raised in such proceeding, automatically ousts the court of jurisdiction, it must be raised at the earliest possible moment, which in this case would have been in the return and the amended return to the charges filed. Pickel v. Pickel, 243 Mo. 666; Hartzler v. Railroad, 218 Mo. 564; Sublette v. Railroad, 198 Mo. 190. It not having been so raised (in fact, not raised till motion for rehearing) it came too late and cannot be considered. The statute attacked is clearly constitutional, because the inherent original power of the court

is not within the terms of the constitutional limitations. When a court is, as in this case, exercising its inherent jurisdiction, which is merely regulated by the statute, no constitutional question can be raised, because jurisdiction is not derived from the statute; and, therefore, any constitutional question is necessarily frivolous. State v. Garesche, 36 Mo. 256; State ex rel. v. Laughlin, 73 Mo. 446; State ex rel. v. Mullins, 129 Mo. 236; State ex rel. v. Harber, 121 Mo. 293; State ex rel. v. Clopton, 15 Mo. App. 589. If the St. Louis Court of Appeals cannot disbar for lack of both inherent and statutory power, neither can this court, because the constitutional provisions as to original proceedings are substantially similar. Constitution, art. 6, secs. 2 and 3, and 12. If the statute giving this court the sole power to admit to the bar is a repeal by implication of section 952, then since this court has no right to disbar, if relator's contention is correct, the result would be that no State court in Missouri could disbar. The power to admit to the bar and to disbar are both judicial powers. Weeks on Attys., sec. 43, p. 90; Petition of Splane, 123 Pa. St. 527; In re Thatcher, 80 Ohio St. 652; In re Durant, 80 Conn. 147. (2) An attorney is simply an officer of the court, and does not hold a public office of trust or profit within the meaning of the Constitution. Weeks on Attorneys, sec. 39, p. 81; State v. Garesche, 36 Mo. 256; State ex rel. v. Mullins, 129 Mo. 231. (3) The English courts under their general powers have from time immemorial disbarred attorneys. Weeks on Attorneys, sec. 80, pp. 161-2. English statutes, since 1275, have regulated the disbarment of attorneys, and from an early day their admission to practice. (4) In this country, from the foundation of the different State governments, the appellate courts have had and exercised original jurisdiction to disbar attorneys, which is an inherent power essential to the administration of justice. The different State statutes on this

subject were merely regulative and did not create the power.  Strother v. State, 1 Mo. 605; State v. Watkins, 3 Mo. 480; State v. Garesche, 36 Mo. 256; State ex rel. v. Laughlin, 73 Mo. 443; State ex rel. v. Mullins, 129 Mo. 236; State ex rel. v. Harber, 129 Mo. 293; State ex rel. v. Smith, 176 Mo. 101; State ex rel. v. Sale, 188 Mo. 493. (5) Our statutes, Secs. 956-9, R. S. 1909, do not mean that an attorney cannot be disbarred where the charge amounts to a felony, without first being convicted of such felony.  If the statutes mean that, they are clearly unconstitutional, as an unreasonable restriction upon the necessary inherent powers of the court.  Railroad v. Gildersleeve, 219 Mo. 170; Ex parte Creasy, 243 Mo. 708; In re Thatcher, 80 Ohio, 670; Ex parte Wall, 107 U. S. 265; State ex rel. v. Harber, 129 Mo. 289.  A disbarment is a civil proceeding, a prosecution for a crime, criminal.  The two proceedings have wholly different objects and are governed by different rules.

GRAVES, J.—This is an original action by way of a writ of *certiorari* directed to the St. Louis Court of Appeals in a case entitled "In the Matter of Ellroy V. Selleck."  The pleadings and facts can be shortly stated.  The Bar Association of St. Louis, Missouri, through their grievance committee, filed charges against Selleck in the St. Louis Court of Appeals, and asked that Selleck be disbarred.  These charges were varied in degree and were five in number, as indicated by the several counts in the petition filed by this grievance committee of the Bar Association.  We need not go into the details of all these charges, because only two are here involved.  The St. Louis Court of Appeals appointed two most excellent lawyers of that bar to hear the charges against Selleck, and these gentlemen made their report to the court finding that Selleck was guilty as to the fourth and fifth charges in the petition for disbarment, but not guilty of the first,

second and third charges in such, petition contained. The report of these two commissioners was approved by the court and by the judgment of the court, Selleck, a duly licensed lawyer of the State, was debarred from the further practice of his profession in all the courts of Missouri.

We need not go into details of the charges contained in the fourth and fifth counts of the petition upon which Selleck was found guilty. It will suffice to state that there was a finding of guilty upon these two counts, and that they in substance and fact charged Selleck with matters which under the law make up and constitute felonies under the criminal laws of the State. In other words, they were not only indictable offenses, but indictable offenses of the graver kind, i. e., felonies. When the report of the commissioners came in, Selleck by his counsel filed exceptions thereto, and among other things those exceptions in paragraph 16 and 17 thereof contained the following:

"Under the pleadings, the information or charges, the court has not the authority or power to revoke respondent's license to practice law in the State of Missouri.

"This court has not jurisdiction in proceedings of this character. It has no jurisdiction, authority or power to revoke respondent's license to practice law in the State of Missouri. Respondent was duly admitted to practice law and licensed to practice law in the courts of the State of Missouri by the Supreme Court of Missouri, the sole court with power to issue license to attorneys to practice law in this State.

"The evidence is uncontradicted that the acts of the respondent complained of were not committed in reference to or in connection with, any matter pending in this court, therefore the question of the authority inherent in a court to control the conduct of attorneys practicing at its bar does not arise,

"This court, with certain marked and definite exceptions, is designed to be strictly appellate in its character, duties and functions. The Constitution of the State of Missouri, in addition to its appellate jurisdiction, abridges this court's powers to issuing writs of *habeas corpus, quo warranto, mandamus, certiorari* and other original remedial writs. The jurisdiction of an appellate court conferred by the Constitution cannot be enlarged, although it may be regulated and restricted by legislative enactment."

These exceptions the court overruled, and entered a judgment, the material portion of which reads:

"It is, therefore, the judgment of the court that the respondent, Ellroy V. Selleck, Esq., who as appears from the records of this court is an enrolled member of its bar, be and he is hereby debarred from the further practice of the profession of an attorney and counselor-at-law under the laws of this State in any of the courts thereof, and especially from the bar of this court; that his license to practice law and as a member of the bar of this State be and the same is hereby canceled and annulled and to be henceforth held as naught. Furthermore, that the relators have and recover the cost of this proceeding, to be taxed by the clerk according to law, of and for the respondent, Ellroy V. Selleck, and that execution issue."

Later, Selleck filed a motion for rehearing, in which the foregoing and other questions were duly preserved. This motion the court overruled, and Selleck then moved to have the cause transferred to this court upon the said several constitutional questions saved and preserved as aforesaid. This motion was likewise overruled. The court, however, entered a new judgment in lieu of its former judgment of December 3, 1912, but in the material parts it is in substance the same as the one we have quoted herein above. In other words, it absolutely debars Selleck from the further practice of his profession in Missouri.

With the case in this situation, Selleck applied to this court for a writ. of *certiorari,* which was granted, and the St. Louis Court of Appeals has certified up its record in the case, which shows the facts we have hereinabove outlined. Upon the filing of the record from the St. Louis Court of Appeals, Selleck, through his counsel, filed a motion to quash such record and judgment, which motion reads:

"Now at this day comes the relator, Ellroy V. Selleck, and moves this honorable court to vacate, set aside and annul the judgment rendered by the St. Louis Court of Appeals on the 3d day of December, 1912, in the case entitled in said court, 'In the Matter of Ellroy V. Selleck, No. 13209,' and to quash the summons and all the other proceedings therein and to adjudge the costs that have already accrued in said case in said Court of Appeals and the costs that may accrue herein against Eugene S. Wilson, Luther Ely Smith, Guy A. Thompson, William F. Woerner and Harry E. Sprague, complainants in said case, because it appears from the certified copy of the record in said case filed herein by the judges of the St. Louis Court of Appeals, in obedience to the writ of *certiorari* issued herein against said judges, that said Court of Appeals of the city of St. Louis had no jurisdiction to render judgment against Ellroy V. Selleck in said case and that the judgment rendered by them in said case on the said 3d day of December, 1912, was and is in excess of the jurisdiction of said St. Louis Court of Appeals, for reasons following:

"First. Said St. Louis Court of Appeals had no jurisdiction to try, hear and determine said cause entitled 'In the Matter of Ellroy V. Selleck,' because the validity of section 952 of the Revised Statutes of Missouri of 1909 is drawn in question by reason of the contention of respondent that said section is in violation of section 12, article 6, of the Constitution of Missouri

and sections 1, 3, and 5, of the Amendment to the Constitution of Missouri of 1884.

"Second. Said St. Louis Court of Appeals had no jurisdiction to try, hear and determine said case against Ellroy V. Selleck because the construction of section 12, article 6, of the Constitution of Missouri and sections 1, 3, and 5, of the Amendment to said Constitution of 1884 is involved.

"Third. Said court had no jurisdiction to try, hear and determine said cause, because the construction of sections 12, 22, and 30 of article 2 of the Constitution of Missouri is involved.

"Fourth. Said court had no jurisdiction to try, hear, and determine said cause, because the construction of the Fourteenth Amendment of the Constitution of the United States is involved and the proceedings in said case in said St. Louis Court of Appeals are in violation of said constitutional amendment in this, that said proceedings deny to Ellroy V. Selleck the equal protection of the law and deny to Ellroy V. Selleck due process of law.

"Fifth. Because the judgment rendered herein by said St. Louis Court of Appeals is in excess of its jurisdiction, being in violation of the provisions of section 958 of the Revised Statutes of Missouri of 1909."

The foregoing sufficiently outlines the case for all present purposes.

I. This record raises at least two questions with reference to the jurisdiction of the St. Louis Court of Appeals in a case of this kind. These questions are

Jurisdiction. (1) has that court jurisdiction at all in cases of this character, and (2) if it has such jurisdiction has it exceeded its jurisdiction in this particular case, by the judgment which it has entered herein. Of these questions in their order:

Under the Constitution the St. Louis Court of Appeals has both appellate and original jurisdiction. Both are limited, however. Its original jurisdiction is limited. The organic law (Sec. 12, art. 6) reads:

"Said court shall have power to issue writs of *habeas corpus, quo warranto, mandamus, certiorari,* and other original remedial writs, and to hear and determine the same."

The case in hand does not fall within these granted powers, and in my judgment the Legislature cannot add to the powers named in the Constitution. The original law was not making a common law court of general jurisdiction when it created the St. Louis Court of Appeals. It is contended, however, that all courts possess the inherent power to protect themselves from imposition. That such inherent power has been found to be vested in this court there can be no question. [State ex rel. v. Harber, 129 Mo. 271.] If possessed by this court, which has like constitutional restrictions, it would be possessed by the St. Louis Court of Appeals. We have also held that we have the inherent power to punish contempts. [State ex inf. v. Shepherd, 177 Mo. 205, and Railroad v. Gildersleeve, 219 Mo. 170.] In the latter case LAMM, J., in a dissenting opinion, concurred in by two other judges, held that whilst the courts possessed an inherent power to punish for contempt, and such power could not be absolutely taken from the courts by the Legislature, yet it was further held that a reasonable legislative restriction upon the exercise of the power should be upheld. [Railroad v. Gildersleeve, 219 Mo. l. c. 200 et seq.] This dissenting opinion was later made the opinion of the court. [Ex parte Creasy, 243 Mo. l. c. 708.]

I, therefore, have no particular fault to find with the doctrine of inherent power either in contempt or disbarment proceedings, provided we do not go be-

yond the rule so well announced by LAMM, J., in the Gildersleeve case, supra. Contempt and disbarment proceedings are kindred spirits. Both have in view the protection of the courts. So, whilst it might be contended with much force that there is no such thing as inherent powers in our appellate court, yet it should be conceded that the weight of authority is against such contention, and this court, among others, has accepted the doctrine of inherent powers. [*Vide,* cases cited, supra.]

II. Conceding now that the St. Louis Court of Appeals has the inherent power to silence a member of the bar in Missouri from practicing his profession, and has the inherent power, under the Constitution, to try and determine such a· proceeding, yet the judgment in the case before us is bad, and the proceedings of that court should be quashed upon our writ of *certiorari,* rather than that our writ be quashed. The statutes of Missouri in disbarment proceedings, as in contempt proceedings, have recognized the right of the courts to act, but such statutes have placed limitations upon this inherent power, and the judgment in the instant case goes beyond the statutory limitations, and is therefore bad. These statutes are sections 952, 956, 957 and 958, Revised Statutes 1909, which read:

Disbarment of Attorney.

"Sec. 951. Any attorney or counselor at law who shall be guilty of any felony or infamous crime, or of improperly retaining his client's money, or of any malpractice, deceit or misdemeanor in his professional capacity, may be removed or suspended from practice, upon charges exhibited and proceedings thereon had, as hereinafter provided.

"Sec. 952. Such charges may be exhibited and proceedings thereon had in the Supreme Court, the St. Louis Court of Appeals, the Kansas City Court of Appeals, or the circuit court of the county in which

the offense shall have been committed or the accused resides.

"Sec. 956. If the charge allege a conviction for an indictable offense, the court shall, on the production of the record of conviction, remove the person so convicted, or suspend him from practice for a limited time, according to the nature of the offense, without further trial.

"Sec. 957. Upon charges other than in the last section specified, *the court shall have power only to suspend the accused from practice until the facts shall be ascertained in the manner hereinafter prescribed.*"

The italics above are ours.

"Sec. 958. If the charge be for an *indictable offense, and no indictment be found, or, being found, shall not be prosecuted to trial within six months, the suspension shall be discontinued,* unless the delay be produced by the absence or procurement of the accused, in which case the suspension may be continued until a final decision."

In the case before us the two charges upon which Selleck was found guilty were indictable offenses, i. e., they were felonies. Now section 956, supra, contemplates a case where the charge is that the derelict lawyer has been tried and convicted of an indictable offense. In such case the statute authorizes the trial court to either absolutely disbar the offending lawyer, or to suspend him for a limited time. But the law does not stop here. The next section (957) says: "Upon charges other than in the last section specified, *the court shall have power only to suspend the* accused from practice until the facts shall be ascertained in the manner hereinafter prescribed."

How the facts "shall be ascertained in the manner hereinafter prescribed" is clearly indicated by section 959, Revised Statutes 1909, which reads: "The record of conviction or acquittal of any indictable offense

shall in all cases be conclusive of the facts, and the court shall proceed thereon accordingly.''

That this is the method of proof contemplated by section 957, supra, is made apparent by the intervening section 958, which says that if the charge is for an indictable offense, and if no indictment shall be found, or if such indictment be found, but shall not be prosecuted to trial within six months, the suspension formerly made by the court shall be discontinued.

Of course this part of the statutory scheme does not apply to many things for which an attorney might be disbarred, but to my mind it is clear that the legislative intent was to hedge the inherent power of the trial court in all cases where the charges in the disbarment proceeding rise to the gravity of indictable offenses. When these several statutes are given a fair and reasonable construction, they mean (1) that courts have the power to absolutely disbar a lawyer who stands convicted of an indictable offense, and the record of the conviction shall be conclusive of the facts. [*Vide,* sections 956 and 959, supra.]   (2)  But if the charge in the disbarment proceeding be for an indictable offense and no conviction is alleged, then the trial court can only suspend the attorney until the facts shall be ascertained ''in the manner hereinafter prescribed.'' That manner is upon a trial of the indictment as indicated by section 959, supra. The facts, under the statutory scheme, can be ascertained in no other manner, where the charges in the disbarment proceeding cover indictable offenses. This to my mind is made clear by the sections of the statute above fully set out. But the lawmakers did not stop here. They have made the matter doubly clear by section 960, Revised Statutes 1909, which reads:

''When the matter charged is not indictable, a trial of the facts alleged shall be had in the court in which the charges are pending, which trial shall be by the court.''

This statute when added to those already quoted rounds out the statutory scheme. When so rounded out it means (1) that where the information in a disbarment proceeding charges an indictable offense, but does not charge a trial and conviction upon an indictment, then the power of the trial court is limited to a mere suspension of the attorney from practice until the facts can be ascertained in a trial of the facts on an indictment, but (2) if "the matter charged is not indictable, a trial of the facts alleged shall be had in the court in which the charges are pending, which trial shall be by the court."

The very language of section 960 shows that it was never contemplated that the court before which the disbarment proceedings were pending should ascertain the facts in a case where the charges reached the gravity of indictable offenses. The trial of such facts was left to the court having charge of the criminal proceedings, and by section 959, the record from such court, whether it showed acquittal or conviction, is binding upon the court hearing the disbarment proceedings.

To my mind this statutory scheme is reasonable. A lawyer from a distant county of the appellate district might be brought before the court upon disbarment charges, which charges included indictable offenses. Such lawyer has no compulsory process for witnesses, as he could have, if the facts were to be determined at the *situs* of the alleged offense in a criminal prosecution. In fact, many more reasons might be suggested, but they suggest themselves, and we shall not further elaborate. Again had the Legislature intended that the court hearing the disbarment proceeding should hear, try and determine the facts, in a case where the charges amounted to indictable offenses, there never would have been the limitations found in section 960 supra. That section limits the court's right to determine the facts to cases involv-

ing charges other than those of indictable offenses. The rule *"expressio unius est exclusio alterius"* is peculiarly applicable here. We conclude, therefore, that if the disbarment information charges an indictable offense, and there is no charge of conviction, the court before which such proceeding is pending can only enter a judgment of suspension until the facts can be determined upon a trial by indictment. If so, then the judgment entered in the instant case cannot stand upon the record certified to us, and that whole record should be quashed, if the statutes we have discussed are reasonable limitations upon the inherent powers of the courts.

III. Are these statutes a reasonable limitation upon the inherent power of the courts? We think so. The disbarment of Selleck under the charges sustained against him brands him as a felon, and this without a trial by jury. It does not seem unreasonable to me for the Legislature to say to the courts, "You have a right to disbar lawyers, but if the disbarment is to be based upon charges amounting to indictable offenses, these facts must be determined by the jury in a forum having peculiar jurisdiction in such cases, and your ultimate action in the case must depend upon the facts so found." The court is left the power to suspend until the facts can be determined, and if the triers of the facts discharge the defendant the suspension must cease, but if they convict, the court can suspend absolutely or for a fixed period. I do not, in view of the learned discussion of my brother LAMM in Gildersleeve's case, supra (a discussion upon a cognate question), believe these statutes so far entrenched upon the rights of courts as would justify us in declaring them unconstitutional and void, as was done with the statutes involved in Shepherd's case, supra. And this brings me to another question in the case.

*Reasonable Restriction on Inherent Power of Court.*

IV. It occurs to me that the Legislature simply had in mind the fact, that one should not be adjudged guilty of a felony, except by the verdict of a jury of his peers. If a charge in a disbarment petition rises to the dignity of a crime, it does not appear to me to be unreasonable for the Legislature to say to the courts: The fact of guilt or innocence of that charge must be determined by a jury upon indictment. Suppose the statute had required the trial court upon the presentation of such a charge to call a grand jury to investigate it, and make the result of that investigation and a subsequent trial upon the indictment, if one be found, conclusive in the case, could it be said that such a statute would be an unreasonable limitation upon the powers of the particular court? We think not. In the supposed case the whole matter would be investigated by the court having charge of the disbarment proceeding, but the investigation would be through the usual channel for the investigation and trial of criminal cases. In the instant case and under the actual statute, the only difference is that the fact of guilt or innocence may have to be determined in another tribunal, but through the same channels. This does not add to the unreasonableness of the law as a restriction upon the court having charge of the disbarment proceeding. Nor will it do to urge extreme cases, where through the efforts of the guilty, indictments are sometimes thwarted, or if found, verdicts of guilt are similarly thwarted. The reasonableness or unreasonableness of a legislative restriction upon the inherent powers of the courts cannot be judged by extreme cases, but must be judged by the ordinary and usual results of cases. Ordinarily one guilty of a crime is indicted and convicted, and by this ordinary and usual result this legislative restriction must be judged. When judged by this standard it.

*Disbarment: Crime: Conviction Should Be in Trial Court.*

cannot be said that this statutory scheme is an unreasonable restriction upon the inherent power of the courts to protect themselves from imposition.

If these statutes mean what we have construed them to mean; and if they are a reasonable limitation upon the inherent powers of the court, then upon the whole case a constitutional question arose when the Court of Appeals assumed to try the facts in the case. Such court could not proceed without determining these statutes to be void, and thereby determining a constitutional question. Of such question they had no jurisdiction, and their whole record disclosing such fact, such record should be adjudged bad, and quashed.

*Certiorari: To Court of Appeals: Constitutionality of Statute.*

For obvious reasons we have declined an opinion as to the merits of Selleck's case. Guilty or innocent he is entitled to a legal trial. This he has not had. I am constrained to hold that the record and judgment of the court of appeals should be quashed.

It is so ordered. Costs to be paid by relator. *Bond* and *Faris, JJ.,* concur; *Brown, J.,* concurs in separate opinion. *Lamm, C. J., Woodson* and *Walker, JJ.,* dissent as indicated by opinion filed.

## CONCURRING OPINION.

BROWN, J.—I concur in the result of the able opinion written by my brother GRAVES, but I do not concur in the views of my brethren that the St. Louis Court of Appeals possesses *inherent* power to hear and determine proceedings to disbar attorneys.

The doctrine of the "inherent powers of courts" was vigorously asserted by some of my learned predecessors on this bench in the case of State ex inf. v. Shepherd, 177 Mo. 205, but the doctrines announced in that case have since been repudiated and now have very few defenders either among courts, lawyers or laymen.

*Courts: Inherent Power.*

It is undoubtedly true that all courts and all officers have more or less implied powers—powers which are indispensable to effectuate authority expressly granted by statutes or constitutions, but inherent power does not exist and cannot exist in a Republic founded upon a written constitution and written laws.

It is true, as asserted by a majority of my brethren, that inherent power did exist in the judicial, as well as in the executive system of the monarchy from which the great body of our laws are derived, but it must not be forgotten that England is a country without a written constitution closely defining the powers of the different departments of its government.

The inherent, arbitrary, and often tyrannical, power exercised by the Mother Country less than two centuries ago was one of the very reasons why this Republic and the sovereign States thereof were erected, and the several powers and duties of our officials expressly limited by constitutions and statutes.

If courts have inherent powers, then their jurisdiction has no definite bounds. It is only one short step from the assertion of inherent power to the assumption of absolute power.

If we possess inherent powers we must go back to the precedents and rulings of other courts to determine what our powers are—how far may we go back? When we transcend the limits fixed by our organic law, then we can go back to the days of mediaeval tyranny to find a precedent for upholding any act of official usurpation.

It was not the theory of those who framed our constitutions that whatever the courts had done in the past was right, and might, with propriety, be repeated. Those provisions of our organic law which ordain that ''excessive bail shall not be required, nor cruel or unusual punishments inflicted;'' that parties shall not be compelled to testify against themselves, and that the ''accused shall have the right to meet the witnesses

against him face to face and obtain a speedy public trial by an impartial jury of his county,'' point back to an area of judicial tyranny from which the framers of·our constitutions and statutes have sought to emancipate us by fixing definite boundaries to the jurisdiction and powers of all courts.

All the splendid safeguards of citizens will be swept away if we may go back beyond the birth of the Constitution to find precedents for construing it away. This is what respondents (as I understand them) ask us to do in this case. In my humble judgment all excuse for the exercise of the so-called inherent powers became a thing of the past in this country when our written constitutions were adopted.

In the creation of our judicial system it became necessary for the framers of our organic law to define the jurisdiction of our several courts. At any event, whether necessary or not, their powers were thus defined, and that is as far as we need inquire.

It is needless to re-state or define here the constitutional powers of the St. Louis Court of Appeals, for the reason that it is not contended by my brothers on this bench, or by the attorneys for respondents, that one word can be found in our Constitution which would even by implication vest in the St. Louis Court of Appeals original jurisdiction of an action to disbar an attorney; and yet, the majority of my brethren seem to concede that power to be vested in that tribunal.

It is urged by learned counsel for respondents that attorneys at law have such close relations with the courts that we must, *ex necessitate,* possess the right to regulate their conduct by disbarring them when they are guilty of crimes or professional misconduct. That doctrine sounds plausible, but it is, nevertheless, fallacious. It is analogous to the doctrine that ''necessity knows no law,'' and the additional rule that the Constitution is impotent in all dealings ''between friends.'' The rule that ''necessity knows no law''

may sometimes furnish a colorable excuse for disregarding law, but necessity cannot make law; neither can we.

It cannot be successfully denied that the clerks of our courts are as close to this court as the attorneys who practice before us. We usually receive the representations of attorneys *cum grano salis;* but transcripts filed with us bearing the official signatures and seals of the clerks of courts of record we treat as importing absolute verity. If the clerk of a court should falsify the record or transcript of the proceedings in a cause, it would certainly tend as strongly to pollute the fountains of justice as anything an attorney could do looking to that deplorable result. Yet in the case of State ex rel. Attorney-General v. Flentge, 49 Mo. 488, we held that the Constitution did not confer jurisdiction upon us to try a clerk charged with misdemeanor in office. In that case the Attorney-General urged the same doctrine now urged by respondents, to-wit, that this court is vested with the inherent powers of the English courts through the adoption of the common law. In overruling that contention BLISS, J., said:

"This court has 'appellate jurisdiction only,' except that it may issue certain specified writs 'and other original remedial writs.' This statutory proceeding for trying a clerk for misdemeanor in office, can by no straining be brought within the exception. No writ whatever is issued, and it is a naked attempt to impose an original duty upon the court forbidden by the Constitution, and for the performance of which no adequate means are provided."

In the case of Wait v. Railroad, 204 Mo. l. c. 504, the present Chief Justice of this court said:

"The Supreme Court is a court of appellate jurisdiction confined by the Constitution to the exercise of such jurisdiction only, that is it sits as a court of er-

rors, except in cases otherwise directed by the Constitution. [Art. 6, sec. 2, Constitution of Missouri.]"

So while there are some ill-considered precedents holding that this court and our courts of appeal may in extreme cases (like the one at bar) step outside the paths marked out for them by the Constitution, there is certainly equally respectable authority for the views for which I am now contending.

I may be mistaken, but I fear that some of my learned associates are unduly impressed by the large, respectable and influential body of citizens who fathered the proceedings to disbar relator. I am sure no one has a greater regard than I for the prosecutors, nor a higher respect for the eminent jurists who rendered the judgment now sought to be quashed; and no one could possess a stronger feeling of contempt than I for an attorney who is guilty of professional misconduct; but, notwithstanding these grave considerations, I solemnly admonish my associates not to make of the present extreme case an excuse for upholding a judgment which the Court of Appeals had no jurisdiction to render.

If we strain the Constitution in this case to accommodate a Bar Association, other influential bodies of men will, from time to time, demand that we assume additional "inherent" powers to work out justice in other extreme cases. By harkening to such pleas the Constitution of our State will become so twisted, warped and punctured that it will lose its time-honored vitality and potency as the safeguard of the people against oppression.

## DISSENTING OPINION.

WOODSON, J.—This is an original proceeding, instituted in this court, by the relator against the judges of the St. Louis Court of Appeals, to review by *certiorari* the record of that court, in the disbarment

proceedings had therein against the relator, which found him guilty as charged, and disbarred him from further practicing law in any of the courts of this State.

In obedience to a writ issued by this court, December 23, 1912, the judges of the St. Louis Court of Appeals duly certified to this court the full record of said proceedings had in that court against the relator, which is quite lengthy, but need not be here fully set forth.

On or about October 3, 1911, Eugene S. Wilson, and others, attorneys-at-law, and members of the St. Louis Bar Association, filed in said Court of Appeals a complaint against Selleck, the relator, a complaint entitled, "Disbarment Proceedings," consisting of five counts or charges. Since, however, relator was acquitted of the first, second and third charges, we will pass them without further comment, and devote our time and energies to the fourth and fifth charges.

The fourth count, at considerable length, charged relator with entering into a conspiracy with one Charles W. Kotzaurek, a merchant, and Bertha Henkel, one of his clerks, to defraud the creditors of Kotzaurek, and in furtherance thereof relator committed and induced said Bertha Henkel to commit perjury, or briefly stated, it charged him with subornation of perjury and perjury.

The fifth count of the complaint, in brief, charged relator with embezzling some $8,000 worth of notes and property belonging to his client John Link, and his widow Minna Link, the executrix of his estate.

After filing said complaint, a summons was duly issued from said court to the respondent, commanding him to appear October 20, 1911, and show cause, if any he had, why he should not be disbarred from the practice of law as an attorney and counselor at law, before the courts of this State, upon charges stated in the petition filed by said Wilson et al.

On November 20, 1911, the respondent filed his amended return and answer, admitting that he was a duly licensed and practicing attorney and counselor at law, before the courts of the State, and enrolled as such in said Court of Appeals, but denied each and every other allegation of the complaint filed against him.

Thereafter, and upon the same day, said court appointed the Honorables Charles W. Bates and George E. Smith, members of the St. Louis Bar, special commissioners, to take the testimony offered by the parties in the cause, with directions to report the testimony taken, with their findings of fact, as well as their conclusions of law upon the issues joined; and required, that the parties thereto, within ten days after filing the same, should, if they saw proper, file their exceptions thereto.

In pursuance to said order of the court, the commissioners heard the evidence introduced by the respective parties, and on July 17, 1912, reported the same to the court, together with their findings of facts and conclusions of law.

As previously stated, the findings on the first, second and third counts of the complaint were in favor of respondent, and those in the fourth and fifth were against him, and were as follows:.

"CHARGE FOURTH. Your commissioners find the issues against Ellroy V. Selleck on this charge and find him guilty as charged.

"Further, upon this charge your commissioners find that Ellroy V. Selleck was in the year 1906 duly admitted to practice law and licensed to practice law in the courts of the State of Missouri, by the Supreme Court of Missouri, and from that time continuously up to the present time he has been engaged in the practice of law as an attorney and counselor.

"That in the months of November and December, 1908, one Charles Mathew Kotzaurek was conducting

two hat stores in the city of St. Louis, one at 603 Pine
street and one at 907 Pine street, and that the said
Kotzaurek was indebted to various persons for rent
of said stores and for hats purchased and contracted
for; that in his employ at that time was one Bertha
Henkel; that at that time and prior thereto the said
Ellroy V. Selleck was and had been the attorney and
counsel for said Bertha Henkel; that some time in the
month of November or December, 1908, said Bertha
Henkel introduced the said Kotzaurek to her attorney,
the said Ellroy V. Selleck; that under the advice and
direction of said Selleck, he conspiring with the said
Kotzaurek and the said Henkel, a scheme was devised
by said Selleck for this purpose, and said Kotzaurek
and said Henkel directed by the said Selleck in his
capacity as their counselor and attorney to execute
falsely bills of sale and promissory notes and to au-
thorize the said Selleck to execute certain checks to
apparently consummate a sale of the stock of hats by
said Kotzaurek to said Henkel; that said papers were
executed and delivered, although in truth and in fact
no such transaction took place as purported to be set
forth by said papers; that litigation ensued involving
those transactions, and as a part of the conspiracy and
plan devised by said Selleck to carry out said fraudu-
lent scheme, he, the said Selleck, directed and in-
structed the said Henkel to give false and perjured
testimony, in pursuance of which plan and scheme said
Henkel did knowingly, willfully and intentionally in
the trial of said litigation, give false and perjured tes-
timony under the direction and at the suggestion of
said Selleck, and the said Selleck, in said litigation,
did knowingly, willfully and intentionally give false
and perjured testimony.

"CHARGE FIFTH. Your commissioners find against
the respondent, Ellroy V. Selleck, on this charge and
find that the allegations in said charge are true.

"Further, your commissioners find that said Selleck, being a licensed attorney as heretofore stated and practicing his profession in the city of St. Louis, was for some months prior to July 20, 1910, employed by one John Link as attorney and legal adviser; that said John Link died on the 20th day of July, 1910, and that letters testamentary were issued by the probate court of the city of St. Louis to his widow, Minna Link, on July 23, 1910.

"That during his lifetime the said John Link was the owner, among other things, of the following notes, secured by deed of trust, to-wit:

"One principal promissory note, dated April 1, 1906, executed by one John Schmittel, for the sum of $3500, which note, prior to the times hereinafter referred to, had been reduced by payments to $2750; said note was payable to B. C. Stevens of Clayton, Missouri, three years after its date, and by him indorsed without recourse. Said note had been purchased by said John Link and time had been extended on said note and new interest notes for $150 each given therefor. Said notes were secured by deed of trust on lot No. 2 of Human Place, being a subdivision of the west half of the west half of the northwest quarter of section eight, township forty-five north, range six east, in St. Louis county, Missouri.

"Also a principal promissory note for $4500, executed by one Ellen A. Manion, dated April 1, 1910, payable three years after date, to August J. Kuhs, Jr., and by him indorsed; also six interest notes accompanying the same, each for the sum of $123.75, all secured by deed of trust on lot eighty-two of Tower Grove Heights amended subdivision in block 4114 of the city of St. Louis, Missouri; that after the death of John Link said Ellroy V. Selleck was employed by Mrs. Minna Link as her attorney to represent her and the estate of John Link, upon which she was administering; that shortly after the death of John Link and

before letters testamentary were issued on John Link's estate, the said Ellroy V. Selleck, either by impersonating John Link or otherwise, unlawfully obtained access to the safety deposit box of the said John Link in the Mercantile Trust Company, where the said Link kept his papers, among others the said notes and deeds of trust; that the said Ellroy V. Selleck obtained possession of said notes and deeds of trust and unlawfully, willfully and knowingly with the intention of depriving the true owners thereof of their property, converted the same to his own use; that he had refused to account for same or their value to the said estate of John Link, deceased, or to the executrix of said estate or to the attorneys employed by the executrix after she discharged from employment the said Selleck; that the said Selleck falsely pretended that John Link in his lifetime had entered into a written contract with him as attorney for said John Link and one McGregor, whereby the said Schmittel notes and deed of trust were transferred to the said Selleck, and falsely pretended that said contract was stolen from his (the said Selleck's) desk, whereas your commissioners find the fact to be that no such contract was ever executed, nor was any such contract ever stolen from said Selleck's desk or otherwise.

"Your commissioners find as a matter of law, upon the facts so found as above, that the said Ellroy V. Selleck is not a fit or proper person to practice law in the State of Missouri, and that his license so to practice should be revoked."

On August 7, 1912, Selleck filed his exceptions to the report of said commissioners. The sixteenth and seventeenth, the only material ones, are as follows:

"(16). Under the pleadings, the information or charges, the court has not the authority or power to revoke respondent's license to practice law in the State of Missouri.

"(17). This court has not jurisdiction in proceedings of this character. It has no jurisdiction, authority or power to revoke respondent's license to practice law in the State of Missouri. Respondent was duly admitted to practice law and licensed to practice law in the courts of the State of Missouri by the Supreme Court of Missouri, the sole court with power to issue license to attorneys to practice law in this State."

In passing, we may state that there is no pretense that the matters and things complained of were committed by respondent, in reference to or in connection with any matter pending in said Court of Appeals.

Respondent filed exceptions to the report of the commissioners; and on December 3, 1912, the court overruled said exceptions and adopted or confirmed the report *in toto,* and thereupon rendered the following judgment:

"It is therefore the judgment of the court that the respondent, Ellroy V. Selleck, Esq., who as appears from the records of this court is an enrolled member of its bar, be and he is hereby debarred from the further practice of the profession of an attorney and counselor at law under the laws of this State in any of the courts thereof, and especially from the bar of this court; that his license to practice law and as a member of the bar of this State be and the same is hereby canceled and annulled and to be henceforth held as naught. Furthermore, that the relators have and recover the cost of this proceeding, to be taxed by the clerk according to law, of and from the respondent, Ellroy V. Selleck, and that execution issue. It is so ordered and adjudged. *Caulfield, J.,* concurs. *Reynolds, P. J.,* not sitting." [In re Selleck, 168 Mo. App. 391.]

On December 12, 1912, the respondent filed his motion for a rehearing, assigning numerous reasons therefor, which are not necessary to be here stated. And on the same day respondent filed in said court a

motion to transfer said cause to the Supreme Court of Missouri, and assigned therefor four of the reasons stated in his motion for a rehearing, which need not be here stated. On December 14, 1912, the court overruled the motion to transfer the cause to the Supreme Court. But, thereafter, and on the same day said court made an order expunging from its records, the judgment theretofore made by it on December 3, 1912, disbarring respondent from practicing law in this State, and made and entered in lieu thereof the following judgment (formal parts omitted):

"Now at this day comes Eugene S. Wilson, Luther Ely Smith, Guy A. Thompson, William F. Woerner and Harry E. Sprague, attorneys at law, who composed the Committee on Grievances of the Bar Association of St. Louis, a corporation duly incorporated under the laws of this State, by McDonald & Taylor, Thomas B. Harvey and Walter N. Saunders, attorneys for said informants, and Ellroy V. Selleck, respondent, in person, in the above-entitled cause, and by his attorney, John A. Talty, and the matter of the exceptions of the said respondent to the special commissioners' report filed herein having been taken up and argued, and the court having fully considered the evidence and exhibits and findings of fact as set forth in said report of special commissioners heretofore appointed by the court to sit together, hear the testimony and make report of their findings of fact and conclusions of law therein to this court with respect to the several charges preferred by said above informants against said respondent, the court doth order and adjudge that the said exceptions to said report be and the same are hereby overruled; the court doth find that the said findings of fact and conclusions of law in said report are true and correct, and doth confirm and approve the same; and it appearing from the record that the said Ellroy V. Selleck, respondent, is an enrolled member of its bar, and the court having approved and con-

firmed said report as hereinabove set out, the court doth order and adjudge that the said Ellroy V. Selleck be and he is hereby disbarred from the further practice of the profession of an attorney and counsellor at law in all courts of record in the State of Missouri under the laws of this State; that his license to practice law as a member of the bar of this State be and the same is hereby canceled and annulled and to be henceforth held as naught, and it is further ordered and adjudged that the said informants have and recover from respondent the costs of this proceeding and that they be taxed by the clerk according to law against said respondent, Ellroy V. Selleck, and that execution issue therefor. Opinion filed.''

Upon this record, respondent filed in this court a motion to quash the proceedings and judgment of the Court of Appeals in said disbarment case.

This motion, which is substantially the same as were the motions filed by respondent in the Court of Appeals for a rehearing and to transfer the cause to this court, is as follows (formal parts omitted):

''Now at this day comes the relator, Ellroy V. Selleck, and moves this honorable court to vacate, set aside and annul the judgment rendered by the St. Louis Court of Appeals on the 3rd of December, 1912 [should read, on the 14th day of December, 1912, instead of ''on 3rd December''], in the case entitled in said court 'In the Matter of Ellroy V. Selleck, No. 13,209,' and to quash the summons and all the other proceedings therein and to adjudge the costs that have already accrued in said case in said Court of Appeals and the costs that may accrue herein against Eugene S. Wilson, Luther Ely Smith, Guy A. Thompson, William F. Woerner and Harry E. Sprague, complainants in said case, because it appears from the certified copy of the record in said case filed herein by the judges of the St. Louis Court of Appeals, in obedience to the writ of *certiorari* issued herein against said

judges, that said Court of Appeals of the city of St. Louis had no jurisdiction to render judgment against Ellroy V. Selleck in said case and that the judgment rendered by them in said case on the said 3rd day of December, 1912 [14th day], was and is in excess of the jurisdiction of said St. Louis Court of Appeals, for reasons following:

"First. Said St. Louis Court of Appeals had no jurisdiction to try, hear and determine said cause entitled 'In the Matter of Ellroy V. Selleck,' because the validity of section 952 of the Revised Statutes of Missouri of 1909 is drawn in question by reason of the contention of respondent that said section is in violation of section 12, article 6, of the Constitution of Missouri and sections 1, 3 and 5 of the Amendment to the Constitution of Missouri of 1884.

"Second. Said St. Louis Court of Appeals had no jurisdiction to try, hear and determine said case against Ellroy V. Selleck because the construction of section 12, article 6, of the Constitution of Missouri and sections 1, 3 and 5 of the Amendment to said Constitution of 1884 is involved.

"Third. Said court had no jurisdiction to try, hear and determine said cause, because the construction of sections 12, 22 and 30 of article 2 of the Constitution of Missouri is involved.

"Fourth. Said court had no jurisdiction to try, hear, and determine said cause, because the construction of the Fourteenth Amendment to the Constitution of the United States is involved and the proceedings in said case in said St. Louis Court of Appeals are in violation of said constitutional amendment in this, that said proceedings deny to Ellroy V. Selleck the equal protection of the law and deny to Ellroy V. Selleck due process of law.

"Fifth. Because the judgment rendered herein by said St. Louis Court of Appeals is in excess of its jurisdiction, being in violation of the provisions of

section 958 of the Revised Statutes of Missouri of 1909."

I.   Counsel for respondent contend that the St. Louis Court of Appeals is a court of limited and special jurisdiction, having no jurisdiction to hear and determine causes except such as are specially conferred upon it by the Constitution; that in all matters except in the issuance and trial of extraordinary writs, said court is solely and only appellate, and consequently it has no original jurisdiction in disbarment proceedings; and predicated upon that contention, counsel for respondent briefly insist: first, that section 952, Revised Statutes 1909, the only expressed authority pointed out which authorizes the Court of Appeals to try and determine disbarment proceedings, is unconstitutional, null and void; second, because the trial of said cause involves the construction of section 12 of article 6, of the Constitution of Missouri, and sections 1, 3 and 5 of the Amendments thereof for the year 1884; third, because the trial of said cause involves the consideration of sections 12, 22 and 30 of article 2 of the Constitution; and fourth, because the trial involves the construction of section 1 of the Fourteenth Amendment of the Constitution of the United States.

For convenience, we will consider these propositions in the inverse order as stated.

Counsel for respondent have not pointed out in what manner the trial of respondent in the Court of Appeals has violated the Constitution of the United States; and we take it for granted that if the Court of Appeals has the jurisdiction to hear and determine cases of this character, then the question of due process of law as guaranteed by section 1 of the Fourteenth Amendment of the Constitution of the United States, is eliminated from this case.  If, upon the

*Marginal note:* Court of Appeals: Jurisdiction: Disbarment: Civil Case.

other hand, said court has no such jurisdiction, then the proceedings had and judgment rendered therein are absolutely null and void, and consequently no necessity exists for passing upon said Federal question.

We, therefore, put aside the fourth insistence of counsel for respondent.

II.   This brings us to the consideration of the third contention of counsel for respondent, namely: that no person shall be prosecuted criminally for felony or misdemeanor otherwise than by indictment or information, etc. (section 12); in criminal prosecutions, the accused shall have the right to appear and defend, etc. (section 22); and that no person shall be deprived of life, liberty or property, without due process of law (section 30)—all of article 2 of the Constitution of Missouri.

It may be conceded that if the proceedings had and maintained in the Court of Appeals against the respondent were criminal in character within the meaning of the Constitution, then clearly they would be absolutely null and void, because not instituted under indictment nor by information, as provided for by said constitutional provisions.

This concession, for the present, disposes of this contention of respondent, which, however, will receive further consideration in connection with the contention that the proceedings had in the Court of Appeals were criminal in character.

III.   The third contention of counsel for respondent is, that the proceedings had against him in the Court of Appeals involve the construction of section 12 of article 6 of the Constitution, and sections 1, 3 and 5 of the Amendments thereof for the year 1884, which provide for the creation of the various courts of appeals of the State, and in a general way, prescribe the jurisdiction thereof.

252 Mo.—26

This proposition is so closely related to and connected with the first insistence of counsel for respondent, I deem it necessary to consider them together.

In fact, all four of the contentions of counsel for respondent, in effect, are that the Court of Appeals has no jurisdiction to hear and determine the case pending therein against him, for the reason that section 952, Revised Statutes 1909, the statute authorizing that court to try the cause, is unconstitutional, null and void; and thus presenting a constitutional question, that court has no jurisdiction or authority to try the case.

If we correctly understand the position of counsel for respondent, it is this: That the complaint filed in the Court of Appeals, against the respondent, is predicated upon section 951, Revised Statutes 1909, and each count thereof charges him with the commission of a felony; and that section 952, Revised Statutes 1909, authorizing such causes as this to be brought and tried in the Court of Appeals, as previously stated, is unconstitutional, null and void; and being a constitutional question, that court has no authority or jurisdiction to hear and determine the same.

It seems to me that counsel for respondent start out with a false premise, namely, that respondent was, within the language of section 12 of article 2 of the Constitution, *prosecuted criminally* in the Court of Appeals.

While it is true, the complaint filed therein against him states facts which constitute the grounds of his disbarment, which if true, constitute felonies, and for which he might be prosecuted criminally, yet a casual inspection of the record will show that he was not prosecuted *criminally,* but it was a proceeding instituted against him for the reasons stated, to revoke his license to practice law in the courts of this State.

One and the same act of a person may, in law, constitute both a criminal and civil liability on his part; nor is it necessary at the present time, as it was in the early stages of the common law, that the person so accused, should first be prosecuted and convicted of the criminal offense before a civil action for damages could be maintained against him for said act. That is elementary, and it would be a useless waste of time to cite authorities in support thereof.

The same is true of the case at bar: the perjury, subornation of perjury and embezzlement proven against the respondent, constituted not only a criminal offense against the State, for which he might be criminally prosecuted and punished, but those acts of his also constituted, as provided by said section 951, Revised Statutes 1909, sufficient grounds for the revocation of his license to practice law in the courts of this State.

It should be borne in mind that section 951 does not declare the acts of respondent criminal, that is done by other sections of the statute, but simply provides that certain crimes therein mentioned, if committed by an attorney at law, afford sufficient grounds for his disbarment; and section 952 provides in what courts proceedings for disbarment may be instituted.

If we bear in mind the distinction between a criminal prosecution, and a civil action instituted to recover damages resulting from the commission of crime, or a civil procedure to disbar an attorney for any of the matters stated in section 951, the confusion that lies at the base of this case wholly disappears, and with it, the contention that said section 952 is unconstitutional. This is apparent for the reason, that respondent was not prosecuted criminally in the Court of Appeals but was proceeded against civilly, to revoke his license to practice law.

That being so, there is no substantial ground upon which to base the contention that said section 952

is unconstitutional, for the simple reason, as previously stated, that when it is seen respondent was not prosecuted criminally in the Court of Appeals, there is no ground for the contention that said section undertakes to confer upon that court jurisdiction over felony cases.

We, therefore, hold that the constitutionality of said section 952 was not involved in the "Disbarment Proceedings" had in the Court of Appeals.

IV. The foregoing observations practically dispose of this case, but there is another incidental matter discussed by counsel for respondent which we consider worthy of brief notice, and that is this: That section 12 of article 2 of the Constitution and sections 1, 3 and 5 of the amendments thereof, define fully the jurisdictions of the courts of appeals; that they have no power or authority to hear and determine cases not embraced within the terms of those provisions of the Constitution; and that disbarment proceedings are not embraced therein, and therefore, the St. Louis Court of Appeals had no jurisdiction of the subject-matter of said proceedings.

Courts: Inherent Power.

If it should be conceded that the Court of Appeals has no expressed constitutional authority to hear and determine disbarment proceedings, it would not necessarily follow therefrom that said court was without authority to try said cause, for the reason that all courts in the very nature of things must have certain inherent powers which are absolutely necessary for their preservation, protection and efficiency.

Learned counsel for respondent deny that proposition and insist that there is no such thing as an inherent power in a court; and that when it exercises an authority not expressly granted to it by law, such exersise is simply usurpation and tyranny.

In a remote sense there is some truth in that in-

sistence, but not in a legal sense, the sense in which that term is here used.

In the early stages of governments, and especially was it true of England, the courts thereof, like their laws, were matters of growth and development, founded upon usage and custom.

As civilization advanced, new rights and duties correspondingly arose, and those rights and duties were largely protected and enforced according to the usages and customs which previously existed, as well as by those which had subsequently grown up.

That process of development has been going on from the beginning of the common law, and it is a continuous growth, where not controlled by legislative enactments, and I presume it will go on to the end of man.

In order to meet those changed and new conditions, the jurisdiction of the courts grew correspondingly, and were and are ever equal to the emergency; and out of this grew the old axiom, *Ubi jus, ibi remedium.*

In this manner those common law courts grew into and became known as courts of general jurisdiction, that is, courts having jurisdiction over all subject-matters not specially withheld from them by custom or usage, or by Parliamentary enactments, among which were the various courts of appeals and of errors.

The States of this country, which adopted the common law, this being one of them, organized the courts thereof, much after the fashion of those in England, and in conferring jurisdiction upon them, in language more or less general, conferred practically the same jurisdiction upon them respectively, as was possessed by the corresponding courts of England; and in determining the jurisdiction of our courts resort must be had to the jurisdiction of the respective courts of England corresponding to those of this State; and

by doing so, we find that the appellate courts of England, under their general powers so acquired, from time where the memory of man runneth not to the contrary, have entertained jurisdiction of disbarment proceedings, and have disbarred attorneys and counselors at law, without any statutory authority. [Weeks on Attorneys, sec. 80, pp. 161 and 162, and cases cited.] Those powers of courts are regulated by acts of Parliament.

So in this country from the foundation of the various States of the Union, the appellate courts thereof have had, and are now exercising, original jurisdiction to disbar attorneys, as part of their inherent power, so essential to the administration of justice. And the statutes of the various States are merely regulative of that power, and are not the creation of it. This is also true of this State. [Strother v. State, 1 Mo., side page 605; State v. Watkins, 3 Mo., side page 480; State v. Garesche, 36 Mo. 256; State ex rel. v. Laughlin, 73 Mo. 443; State ex rel. v. Mullins, 129 Mo. 231, l. c. 236-7; State ex rel. v. Smith, 176 Mo. 90, l. c. 101, 103, 105, 106; State ex rel. v. Sale, Judge, 188 Mo. 493, l. c. 497-498.]

The same ruling prevails in other States, as will be seen by consulting the following cases: In re Egan, 22 S. D. 355; In re Breen, 30 Nev. 164; In re Jones, 70 Vt. 71; People v. Bamborough & Brown, 255 Ill. 92; In re Henderson, 88 Tenn. 531; Penobscot Bar v. Kimball, 64 Me. 140; Strout, Petitioner, v. Proctor, 71 Me. 288; Delano's Case, 58 N. H. 5; People ex rel. v. Green & Johnson, 9 Colo. 506; State v. Holding, 1 McCord (S. C.), 379; In re Robinson, 136 N. Y. Supp. 548 (1912); In re Mendelsohn, 135 N. Y. Supp. 438 (1912); In re Flannery, 135 N. Y. Supp. 612 (1912); In re Thatcher, 80 Ohio St. 492, l. c. 652-5.

This rule seems to be conceded by counsel for relator, for on page 14 of their brief it is stated: "The accepted doctrine is that statutes and rules merely

regulate the power to disbar, instead of creating it.''
But in justice to counsel, it should be stated that they
insist that said inherent power of the appellate courts
of this State is abrogated by the Constitution and can-
not be conferred by statute.

This same contention would apply equally well to
this court, for there is no constitutional provision au-
thorizing it to entertain disbarment proceedings, yet
it has exercised that power from the creation of the
court.

This insistence is not well founded, as will clearly
appear from a consultation of the authorities previ-
ously cited.

I am, therefore, of the opinion that the writ of
*certiorari* heretofore issued should be quashed. *Lamm,
C. J.,* and *Walker, J.,* concur herein.

## DISSENTING OPINION.

LAMM, C. J.—I am committed to the doctrine of
inherent power in courts. To that extent I concur
with the opinion of Brother GRAVES. I
agree to the legislative right to temper-
ately regulate mere inherent power so
long as it is not destroyed. In such case
the power to regulate is not the power to
destroy. [Railroad v. Gildersleeve, cited by him.] I
part with him (assuming for the instant that he has put
the right construction upon our statutes relating to
disbarment) on the question of legislative power to
pass the laws involved. I consider them unreasonable
regulations in the particular I am about to mention.
That a court has the inherent power to disbar an attor-
ney and that the lawmaker can pass laws regulative of
that power, which permits the court to disbar for light
offenses whilst at the same time denying the power to
disbar for dark and heavy offenses except on the con-
dition precedent of conviction, is not to my mind rea-

*Courts:
Inherent
Power:
Unreasonable
Restrictions.*

sonable. Such statutes amount to this: If an attorney's practice is to embezzle or forge documents or steal his client's moneys or commit subornation of perjury or obtain credit or property by false pretenses, he may not be suspended or disbarred if so be he can escape punishment because of the doctrine of "reasonable doubt," or by the statute of limitations, or by a technical defect in the indictment, or because of the inefficiency or lukewarmness of the prosecution, or because of the absence of witnesses, or because the case was not brought to trial at the term required by statute, or because of many other technical ills and mishaps attending prosecutions for felonies and breaking such cases regardless of merits. So he may escape conviction by a hung jury. I cannot accept the doctrine that such is a reasonable regulation. An attorney is an officer of the court, a hand or instrumentality of the court, part and parcel of its being when *rectus in curia*. To refuse to the court power to take away his general warrant of attorney and the right to exercise in court the delicate, important and dignified functions of an attorney at law, because of the accidental fact that one, two or three of the twelve men in a box refuse to render a verdict of guilty, to my mind is unreasonable. To give that same court power to disbar or suspend for minor breaches of the ethics of his profession, and to halt that power at so grave a breach, to my mind is absurd. Now the law abhors absurdity. And yet to that complexion we must come if my learned brother's conclusion be correct. I pass no opinion on the question whether the construction put upon our statutes by him is the only allowable one, but accept his views to that effect for the purposes of this dissent, and put my dissent on the ground of the lack of legislative power to take away the inherent power of a court to disbar—power exercised by *nisi prius* and appellate courts since the memory of man runneth not to the contrary, as pointed out and

State ex rel. v. Reynolds.

abundantly shown by the opinion of my Brother Wood-son. That power does not have its origin in a legislative grant, hence could not get its *quietus* there.

One observation more: Is it thinkable that the Legislature in dealing with the subject of disbarments intended to put it out of the power of a court of justice to disbar an attorney who was too shrewd and cunning to be technically convicted of an offense if so be that he managed to range high in offenses against the law and ethics of his profession? Is the law of disbarment a web through which big flies break and little ones are caught? Was that legislation in the interest of disreputable attorneys or was it in the interest of the general public and the dignity and righteousness of courts? Nay, more, may an attorney become so picturesque in his monumental and blazing indiscretions that the lawmaker shall be held to evince solicitude and care to keep him in office, as a dead fly in the ointment of jurisprudence? The idea amuses me as curious, but does not convince.

The judgment should be affirmed. Hence I concur in the views of my Brother Woodson and dissent from the conclusion of my Brother Graves. *Walker, J.,* concurs in these views.