## IN THE MATTER OF MILLS, AN ATTORNEY.

R. S., c. 95, sec. 84, provide that any attorney, solicitor or counsellor may be removed or suspended, who shall be guilty of any deceit, malpractice, crime or misdemeanor. The court may remove or suspend an attorney for other causes than those mentioned in the statute, which is not to be construed as restrictive of the general powers of the court over its officers.

A charge made against an attorney for the purpose of removing him, that he is of notoriously bad character, not to be believed under oath, and unworthy to practice as an attorney, is too general. Specific acts should be charged, so as to give the respondent an opportunity of answering them.

In the matter of Mills, an Attorney.

But a charge that the reputation of an attorney for truth and veracity is so notoriously bad that he is not to be believed under oath, contains good cause for removal, and is not too general.

*By the court,* WHIPPLE, C. J. This case comes before the court upon questions reserved by the circuit judge of the county of Kent.

Charges, affecting the professional and moral character of the respondent, were filed by Charles P. Babcock against Mills, in the circuit court of the county of Kent. Among these charges were the following:

1. "That said Mills is of notoriously bad character, not to be believed under oath, and unworthy to practice as an attorney."

2. "That the reputation of said Mills for truth and veracity is so notoriously bad, that he is not to be believed under oath."

Testimony was taken in support of each of these charges. It being objected by the respondent, that they were too general and indefinite in their character, and that, if true, they would not authorize the court to revoke his license, the circuit judge deemed it proper to ask our advice in respect to the objections thus raised. By the Revised Statutes, chap. 95, sec. 26, it is provided that " No person shall practice as an attorney or counsellor at law (except in the county court), or as a solicitor or counsellor in chancery, within this state, unless he shall be approved by the court for *his good character and learning.*" The 27th section authorizes the supreme court to "grant to any citizen of this state, of *good moral character,* and of the age of twenty one years, a license to practice as an attorney and counsellor at law, upon an examination at a stated term of such court, in the presence of the justices thereof, when satisfied that the applicant possesses sufficient legal learning and ability to discharge the duties of such office." The 34th section provides that " Any attorney, solicitor or counsellor, may be removed or suspended, who shall be guilty of any deceit, mal-practice, crime or misdemeanor."

The pre-requisites necessary to admission at the bar, are, *first,* that the applicant shall be approved by the court for his *good moral character;* and, *second,* that he possesses sufficient *legal learning* to discharge the duties of his office.

The authority of the court to remove or suspend an attorney when guilty of any deceit, mal-practice or crime, exists independently of the statute. Whether this authority to revoke a license granted to an at-

torney, extends to causes other than those specified in the thirty-fourth section, is now, for the first time, presented for the consideration of this court.

If our courts are restricted to the causes set forth in the statute, there would seem to be a lamentable defect in our laws. The words "deceit" and "mal-practice," in the statute, have direct reference to the conduct of an attorney, as such attorney; and if the authority of our courts to remove or suspend an attorney is to be thus restricted to *official* delinquencies, it follows, that however degraded his moral character may be— whatever fraud or deception he may be guilty of—if such fraud or deception is unconnected with his *professional* acts, he is deemed worthy of a place at the bar. In other words, an individual may be guilty of acts which involve a violation of every moral precept, and yet retain our license, and practice in our courts, provided these acts were committed in his *private*, and not *official* capacity.

If it is of consequence to the community that those who are in any way concerned in the administration of justice, should possess a reputation unstained by those vices which in their nature tend to degrade and corrupt, then is it important that a power should be lodged in some tribunal, to purge the bar of such as may have become the victims of such vices. That no person can faithfully and honorably discharge the delicate and responsible duties of an attorney, unless fortified by strong moral principles, is too clear for argument. The *nature* of those duties necessarily implies the possession of high moral character, in order to their conscientious performance. This our statute contemplates, for it is only to those who are "approved by the court for their good character," who are permitted to wear the honors and bear the responsibilities of an attorney.

If it be necessary, to gain admission at the bar, that a person should furnish the evidence of "moral character," as required by the twenty seventh section, how infinitely greater the necessity, that he should actually possess that character, when he shall have entered upon the active and exciting theatre of professional life, where he is beset at every moment by temptations, well calculated to test the firmness of his principles.

It cannot be contended, with reason, that while our courts are clothed with the authority to revoke the license of an attorney who may

be convicted of a *misdemeanor*, that they are powerless when that authority is invoked in respect to an attorney who may be convicted of immoralities which utterly unfit him for the association of gentlemen, and the faithful discharge of his duties, either to his clients, or to the court in which he may practice.

Can it be that an attorney, convicted of a petty offence in no wise involving moral turpitude—one who may have adorned the profession by his talents, his eloquence and his learning—may be expelled from the bar; while another, whose reputation may not have extended beyond the limits of the township in which he resides, and whose character may be stained by gross immoralities, is permitted to appear as a counsellor and advocate in courts of justice? Such a state of things would result, if the views taken by the respondent be correct.

As it is a condition precedent to his admission at the bar, that an attorney should possess a blameless moral character, I think he forfeits his rights as such attorney, upon a breach of that condition. When a license is granted to an attorney, we certify to the world, that he has been " approved by the court for his good character and learning." Upon this certificate the public have a right to rely. They may fairly presume, so long as the attorney retains his office, that his " good character " continues to be " approved by the court," and that they may safely rely on his honor and integrity.

Should this court, after being officially advised that one of its officers has forfeited the good name he possessed when permitted to assume the duties of his office, still hold him out to the world as worthy of confidence, they would, in my opinion, fail in the performance of a duty cast upon them by the law. It is a duty they owe to themselves, to the bar, and the public, to see that a power which may be wielded for good or for evil, is not entrusted to incompetent or dishonest hands. The extreme judgment of expulsion is not intended as a punishment inflicted upon the individual, but as a measure necessary to the protection of the public, who have a right to demand of us, that no person shall be permitted to aid in the administration of justice, whose character is tainted with corruption.

Upon principle, therefore, I think that the authority of this court over attorneys ought not to be restricted to the cases specified in the statute. And the reasoning by which I am conducted to this result is

conclusive to show, that the legislature never intended to withhold from our courts the exercise of a power so necessary to preserve the administration of justice from pollution, and the public from imposition.

Let us now examine the .question presented for our consideration, with reference to adjudged cases to be found in the English and American reports.

In ex parte Brownsall, Cowp. 829, an application was made to the King's Bench, to strike the defendant's name from the roll of attorneys, he having been convicted of stealing, five years before the application, and no misconduct *since* having been imputed to him. Lord Mansfield remarked, that as it was for the dignity of the profession that a solemn opinion should be given, he would take an opportunity of consulting all the judges. At a subsequent day, he stated that he had consulted all the judges, and they were unanimously of opinion that the defendant, " having been burnt in the hand, is no objection to his being struck off the roll; and it is on this principle, that *he is an unfit person to practice as an attorney.* It is not by way of punishment, *but the court, in such cases, exercise their discretion, whether a man whom they have formerly admitted, is a proper person to be continued on the roll or not."*

In the case of the King v. Southerton, 6 East. 127, the defendant had been indicted and convicted for sending a letter to extort money, &c. Judgment was afterwards arrested, on the ground that the offence of which the defendant had been convicted, was not cognizable by the laws of the country. Lord Ellenborough, Chief Justice, however, remarked, " that enough appeared to the court to satisfy them that the defendant *was a very improper person* to remain as an attorney on the rolls of the court." Appropriate proceedings having been instituted, the defendant's name was stricken from the roll.

In Smith's case, 1 Brod. & Bing., 522, the defendant, an attorney, was stricken from the roll " for supporting his clerk in swearing falsely (as bail) that he, the clerk, was a lace manufacturer."

It has been held by the supreme court of Ohio, that " official delinquency and *base* immorality" will constitute a good ground for revoking the license of an attorney. 11 Ohio 430. The statute of Ohio authorizes the supreme court or court of common pleas to suspend any at-

torney or counsellor at law from practising in their respective courts, "*for misconduct in office, or for good cause shown.*" It is not apprehended that this last cause was intended to enlarge the powers which every court has over the conduct of this class of officers. The words, " for good cause shown," must, according to every sound rule of construction, refer to such causes as would, according to law and the practice of courts, justify the exercise of this power.

In Leigh's case, 1 Munf. 481, Judge Roane, in speaking of attorneys, says: " In order to secure a due degree of probity and knowledge in their profession, so indispensable to persons acting in that character, none are *permitted* to act as such but those who are allowed by the judges to be skilled in the law, and certified by the court of the county of their residence to be persons of honesty, probity, and good demeanor. Having obtained the sanction of these two tribunals, touching these two particulars, an attorney is *licensed* or *allowed* to practice; and the court have also a *continuing control over them*, with power to revoke the licenses for *unworthy* practice or behavior."

In the case of Levi S. Burr, an attorney, reported in 1 Wheeler's Crim. Cases, 503, Judge Cranch has examined, with great learning and ability, the whole ground upon which the authority of courts to strike attorneys from the roll, rests, and the nature and extent of that authority. The question was distinctly presented, and argued by able counsel, whether the court was limited to the investigation of such charges as related to the defendant's conduct as an attorney. In discussing this question, Judge Cranch puts the following inquiries: " Can it be said that if an attorney should be convicted of highway robbery, or larceny, or forging, or any other infamous crime, or *grossly dishonest conduct*, the court must close its eyes—must refrain from inquiry? Is not the respectability of the court, in some measure, connected with that of the bar? A regard to the purity of the administration of justice demands that the bar should be pure and honest, and, if possible, highly honorable." Having found the defendant guilty of several charges, relating as well to his *private* as *professional* conduct, Burr was suspended.

I have been referred to the case of *James Stryker*, (1 Wheeler's Criminal Cases, p. 330), as containing doctrines adverse to the views I have expressed in this opinion. It is certainly true, if the conclusions of the recorder in that case be correct, that the authority of courts over

attorneys, can only be exercised when the acts complained of relate to his conduct as attorney, or where he has been guilty of a crime "which would disqualify him from being a witness. upon oath." The weight to be given to this authority, must depend upon the strength of the reasoning by which it is supported. That reasoning I shall have occasion to examine in the progress of this opinion.

In the case of Smith *v.* The State of Tennessee, it was held to be good cause for striking the name of an attorney from the roll, that he had killed another person in a duel. 1 Yerger 228.

Without multiplying authorities in illustration of the principle I am seeking to establish, I propose now to apply those already cited to the question immediately before us. The allegation, that the defendant "is of notoriously bad character," is, I think, too general. Specific acts should be charged, so as to give the respondent an opportunity of answering them. It would be unsafe to sustain a charge in this general form, as a wide difference of opinion exists as to what constitutes a good or bad character. What one person may regard as virtuous, another may consider vicious.

The other charge, I do not think is obnoxious to this objection. It is certain and specific, and alleges, that the reputation of Mills for truth and veracity is so notoriously bad, that he is not to be believed under oath. If this charge be sustained, will it authorize the circuit court to suspend or revoke the license heretofore granted to the respondent? It is not questioned, that if evidence to support such a charge had been adduced to the court when Mills presented his application for a license, that it would have been denied him. He would have been told, that a person whose reputation for truth and veracity was so bad, as that he would not be believed under oath, was an unsafe depository of a power to act as a public attorney: that such a power could only be entrusted by courts to those who sustained "a good moral character." If this be so, is it consistent with reason or policy, to allow a person to retain a license who may have become infamous *after* it is granted? The oath which he has taken, binding him to a faithful discharge of his duties, is no longer obligatory on his conscience: for a person, whose reputation is thus condemned, will not hesitate, when prompted either by his interests or his passions, to violate that oath.

If an attorney be guilty of the crime of perjury, courts do not hesi-

In the matter of Mills, an Attorney.

tate to declare his office forfeited: and this for the reason, that no confidence is to be placed in his veracity. The fact being established by the verdict of a jury, that he has once committed perjury, he is no longer permitted to give evidence in a court of justice—all confidence in his veracity is destroyed—the legal inference is, that having in a single instance stated an untruth while under the sanctions of an oath, he would, without any compunctions of conscience, repeat the offence.

Is an individual, whose conduct in life is such as to warrant the general belief that he would commit the crime of perjury, entitled to any more confidence than the person who may have been legally convicted of that crime? The distinction between the supposed cases consists in this, that the unworthiness of one has been pronounced by the verdict of a jury, and that of the other by the concurrent testimony of those who have been the daily witnesses of his conduct: the infamy of one may have been established by false witnesses—the witnesses by which the infamy of the other is established are his *acts*, which cannot lie.

*Again:* Let me suppose the defendant put upon the stand as a witness. After rendering his testimony, a cloud of witnesses, composed of his immediate neighbors, are next called to the stand, and all agree that his reputation for truth is so bad that they would not believe him under oath. Now, upon such testimony, a verdict that he is guilty of perjury cannot be pronounced against him, and yet the court would instruct the jury that his testimony is unworthy of belief, unless corroborated by that of other witnesses whose characters are unimpeached. And, unless thus corroborated, he stands upon no better moral footing than the convicted felon.

If these views be just, the inference seems irresistible, that if the respondent is such as is described in the last charge, a power resides in the court of withdrawing the license or permission heretofore granted to him. I perceive no hardship in subjecting the defendant to a trial on this charge. It calls upon him to defend his reputation against a charge which may be easily repelled, if that reputation stands fair in the community in which he dwells. It is often more difficult to defend one's self against particular charges of falsehood or of perjury, than against a general charge like that preferred against the respondent.

A man who bears an honest name is always ready to repel an as-

sault upon his general character. No argument in favor of the respondent can be deduced from the fact that other public officers are not subjected to removal, except for *official* misconduct. In their cases a remedy is provided: their appointments are for limited periods, when their conduct is subjected to the scrutiny of the appointing power. But in the case of attorneys, their right to exercise the functions of their office continues during good behaviour.

I do not wish to be understood as affirming, that for every moral delinquency, the court would be authorized to revoke the license of an attorney. In the exercise of a sound discretion, the court should only entertain such as are in their nature gross, and unfit a person for an honest discharge of the trust reposed in him.

In the case before us, I am of the opinion that, if the charge I have been considering is made out by proof, that the respondent has forfeited his office; that if fully established, it necessarily implies a baseness of character which disqualifies him for discharging the duties of his office with that faithfulness and integrity so necessary to preserve the honor of the profession from reproach, the public from imposition, and the administration of justice from impurity.

GREEN, J., dissented, as to the sufficiency of the second charge, deeming it too general; but in all other respects concurred in the opinion of the court.