# CASES DETERMINED

# ST. LOUIS COURT OF APPEALS.

## OCTOBER TERM, 1880.

STATE OF MISSOURI, EX REL. P. N. JONES, *v.* HENRY D.
LAUGHLIN, Judge.

### February 15, 1881.

1. The judge of the St. Louis Criminal Court has jurisdiction to disbar an attorney *proprio motu.*
2. The statute concerning attorneys does not restrict the common-law right of courts of record to strike from their rolls attorneys found to be unfit to practice law.

APPLICATION for prohibition.
*Writ denied.*
R. S. MacDONALD, for the relator.
JOHN A. HARRISON, for the respondent.

BAKEWELL, J., delivered the opinion of the court.

This is an application for a writ to restrain respondent, who is judge of the St. Louis Criminal Court, from proceeding *proprio motu* to disbar the relator.

The return of respondent sets forth that, having reason to believe from facts that appeared in evidence before him

that relator, who is an attorney of the St. Louis Criminal Court, had been guilty of duplicity towards the court, and of wilfully abusing its process, and that he had thereby caused great and needless expense in the trial of a certain cause in said court, the respondent, as judge of said court, of his own motion, caused relator to be cited to appear before the bar of said court on December 20, 1880, at 10:30 A. M., and then and there show cause why the name of relator should not be stricken from the rolls of said court, and relator be precluded from further practicing his profession as an attorney in said court; that respondent caused witnesses to be summoned for the purpose of a thorough investigation of the matter; that an investigation was had, and that the matter is now held by respondent under advisement; that respondent proposes to proceed to determine from the evidence the guilt or innocence of relator; and that if he finds relator guilty he will, unless prohibited by this court, enter an order for his punishment. Respondent says that he pleads his jurisdiction as judge of said court as a bar to the granting of the writ prayed for.

The right to punish for contempts, and also the right to disbar attorneys, have from the earliest times been intrusted to the courts; and, by the rules and practice of common-law courts, it rested exclusively with the court to determine who is qualified to continue one of its officers as an attorney and counsellor of the court, and for what cause he ought to be removed, the power being regulated, however, by a sound and just judicial discretion, guarding the rights and independence of the bar as well as the dignity and authority of the court. *Ex parte Secombe*, 19 How. 12; 2 Cranch, 309; *In re Bowman*, 7 Mo. App. 569. The attorney holds office during good behavior, and can only be deprived of it for misconduct ascertained and declared by the judgment of the court, after opportunity to be heard has been afforded him. But the admission or exclu-

sion of attorneys is the exercise of judicial power which, in the absence of any statutory limitation, must be held to be possessed by the Circuit Courts of this State. The St. Louis Criminal Court has all the original and appellate jurisdiction in criminal cases vested in the several Circuit Courts of this State. There is nothing whatever in the act creating that court, or in any subsequent act specially relating to it, which can be held in any way to impair or limit its jurisdiction to punish or to disbar attorneys. Rev. Stats. (App., chap. 2) 1510 *et seq.*

The right to remove attorneys for misconduct, being necessarily incident to all common-law courts of general jurisdiction, is not derived from the Legislature. Where there is a statute on the subject, courts may disbar for causes not specified in the statute, which is not to be construed as an enabling act, nor as restricting the general power of the court over its officers. *In re Mills*, 1 Mich. 392; *Beene* v. *The State*, 22 Ark. 149; *Jackson* v. *The State*, 21 Texas, 668; *In re Bowman*, 7 Mo. App. 569; 8 Cent. L. J. 250.

Where the statute has been held to restrict the powers of the judiciary as to the punishment and disbarment of attorneys, it will be found that the language of the statute is such as to leave no room for construction, as in *Kane* v. *Haywood*, 66 N. C. 1, where the statute goes on with manifest intention to restrict the power of the judiciary just as far as the Constitution of that State permits the General Assembly to do so, and confines the malfeasances and nonfeasances for which an attorney may be disbarred to specified particulars, and expressly repeals any part of the common law that recognizes other acts as grounds of disbarment.

In *Ex parte Smith*, 28 Ind. 47, it is held that in Indiana there can be no disbarment by a summary order; but the statute there provides, that where proceedings to remove an attorney are commenced by direction of the court, the court

must direct an attorney to draw up and prosecute an accusation, etc.

Our statute provides (Rev. Stats., sects. 488, 489) that " any attorney who shall be guilty of any felony or infamous crime, or improperly retaining his client's money, or of any malpractice, deceit, or misdemeanor in his professional capacity, may be removed or suspended from practice upon charges exhibited and proceedings thereon had, as hereinafter provided. Such charges may be exhibited and proceedings had thereon in the Supreme Court, the St. Louis Court of Appeals, or the Circuit Court of the county in which the offence shall have been committed or the accused resides." The statute then goes on, in the next succeeding sections, to provide for fixing a day of hearing, for service of citation and charges, and proceedings on failure to appear. Section 493 provides that if the charges allege conviction for an indictable offence, the court shall, on production of the record of conviction, remove the person so convicted, or suspend him from practice for a limited time, according to the nature of the offence, without further trial. Section 494 provides that, " upon charges other than in the last section specified, the court shall have power only to suspend the accused from practice until the facts shall be ascertained, in the manner hereinafter provided." The succeeding sections provide for discontinuing the suspension if no indictment be found or prosecuted; that the record of conviction shall be conclusive; that the trial, where the facts charged are not indictable, shall be by the court; that the court shall pronounce sentence of removal or suspension, according to the nature of the facts found. There are also provisions for an appeal.

"May" is usually permissive only, and not exclusive (*The Commonwealth* v. *Haynes*, 107 Mass. 197), and its use in sections 488, 489, would seem to leave those sections and the whole act fairly open to a construction not restrictive of the common-law powers of courts over their officers; and if

the statute is open to such construction, such construction should, we think, be given to it. Section 494 expressly restricts the power of the court to suspension from practice, except where there has been conviction of a capital offence. But this section must be taken, in connection with the other sections, as referring to the special proceeding to disbar, originating on charges exhibited.

Suppose that no charges are exhibited, is the court deprived of its common-law power over its officers? It cannot compel the exhibition of charges, and it cannot itself exhibit charges to itself. The statute does not in express terms, or by any fair construction, restrict that power to protect itself which from time immemorial has been lodged in the court, and which the judges have again and again declared to be indispensable to preserve the administration of justice. The end to be obtained by removal of an attorney can be obtained effectually in no other way. That end is the protection of the court and of the public, to whom the court, by its license, has held out an unworthy man as worthy to practice law. *Austin's Case*, 5 Rawle, 204. Punishment for contempt is another matter. There is no necessary connection between a contempt of court and malpractice. An attorney should be removed in many cases where there has been no contempt. It is monstrous to say, for instance, that one whose character for truth and veracity is so utterly gone that no one would believe him on oath, should remain an officer of a court of record, having special access to its files and records, and great facilities for deceiving the court and obstructing the administration of justice. *In re Mills*, 1 Mich. 392. Yet such a one may never be guilty of a contempt of court; and if he were, the public and the court are not protected by a punishment which is by statute limited to a fine of $50 and ten days' imprisonment for each offence.

The statute evidently is not an enabling act, so far as the

judges and courts are concerned; nor does it in clear and unmistakable terms restrict their common-law jurisdiction in this regard. Its object seems to have been the protection of suitors and of the general public, by giving to any person wronged by the misfeasance or non-feasance of an attorney the right to inaugurate proceedings to bring the delinquent attorney to trial, with a view to suspension or disbarment. Its object is the purification of the profession and the protection of the public, not by taking away from the courts a power which they have always had, and which we believe they have almost never, by any harsh or hasty use of it, abused; but by putting into the hands of the people a ready means of bringing to public degradation and disgrace any one guilty of unfaithfulness to a client, or of such acts of professional misconduct as to make it dangerous to the public that he should be any longer held out to the world as worthy of the implicit confidence which must necessarily be reposed by the client in his attorney.

Nothing is better settled than this: that without statutory provision, and in the absence of any express statutory prohibition, the right to determine who shall appear before it in the capacity of attorneys is incidental to every court of common-law powers; that it is necessary to the preservation of the respectability of the profession, and of that respect for the judiciary which is essential to the due administration of justice, and the preservation of the rights of persons and of property. The power to disbar an attorney ought to be exercised with the greatest caution, not as a means of punishment, and only in extreme cases; for the decision of a court disbarring one of its attorneys must have the most dreadful effect upon the social standing and future position of the unhappy man disbarred. The power should only be exercised where the delinquent has shown himself utterly unfit to be a member of an honorable profession and an officer of the court. See cases cited in Weeks on Attys., notes to sect. 80, p. 140.

If, however, the St. Louis Criminal Court has jurisdiction to disbar the relator, we cannot, on this application, examine the grounds which may exist for the exercise of its jurisdiction in this respect. If the court whose action is complained of acts within its jurisdiction, the writ will not lie, however erroneous the action may be which the superintending tribunal is asked to prohibit. *Wilson* v. *Berkstresser*, 45 Mo. 283.

We are, therefore, compelled to deny the peremptory writ. All the judges concur.