In re Marshall.

## In Re JOHN O. MARSHALL.

St. Louis Court of Appeals, November 4, 1913.

1. **JUDGES: Disqualification: Disbarment of Attorney.** The fact that the judges of the Court of Appeals were honorary members of a bar association which instituted a disbarment proceeding against an attorney in that court would not disqualify them from hearing the case, where, under the by-laws of the association, they were not liable either for dues or assessments.

2. **ATTORNEY AND CLIENT: Disbarment of Attorney: Jurisdiction of Courts of Appeals.** The Courts of Appeals have jurisdiction of an original proceeding to disbar an attorney, under Sec. 951, R. S. 1909, for "any felony or infamous crime or improperly retaining his client's money or any malpractice, deceit or misdemeanor in his professional capacity;" following State ex rel. Selleck v. Reynolds et al., Judges, 252 Mo. 369.

3. **APPELLATE PRACTICE: Supreme Court: Controlling Decisions.** The dicisions of the Supreme Court must be accepted as conclusive by the Courts of Appeals, regardless of the views of the latter courts as to the correctness of such decisions.

4. **ATTORNEY AND CLIENT: Disbarment of Attorney: Improper Retention of Client's Money: Embezzlement: Jurisdiction of Courts of Appeals.** To constitute embezzlement there must be a felonious intent, at the time of the unlawful conversion, to appropriate the money or property to the use of the person appropriating it, with a fraudulent intent to deprive the owner of it; and hence an attorney who improperly retained money collected by him from a client, but who had no fraudulent intent to appropriate it to his own use, was not guilty of embezzlement, under Sec. 4553, R. S. 1909, but was merely guilty of improperly retaining his client's money and of deceit in his professional capacity, so that the Court of Appeals had jurisdiction of an original proceeding to disbar him on account of such improper retention, notwithstanding he had never been tried for nor convicted of an offense in connection with such retention.

5. **APPELLATE PRACTICE: Persuasiveness of Findings of Commissioners.** In view of the fact that commissioners appointed by the Court of Appeals had the witnesses before them and could, therefore, better determine the force and weight of the testimony than the court could on the record *held*, that the court will accept the conclusions of the commissioners on the evidence.

6. **ATTORNEY AND CLIENT:** Disbarment of Attorney: Improper Retention of Client's Money: Punishment. In an original proceeding instituted in the Court of Appeals to disbar an attorney for deceit in his professional capacity, and for improperly retaining money collected by him for his clients, but without any intent to convert the same to his own use, *held*, on the attorney being found guilty, that he should be suspended from practice as an attorney for a period of one year.

Disbarment of Attorney.     Orginal Proceeding.

JUDGMENT OF SUSPENSION.

*Walter H. Saunders* for relator.

REYNOLDS, P. J.—This is a proceeding to disbar respondent as an attorney and counsellor at law from the practice of his profession in this State. It was instituted in this court by the Grievance Committee of the Bar Association of the city of St. Louis, a corporation duly incorporated under the laws of this State, having for its object, among other things, "to maintain the honor and dignity of the profession of law, . . . and of the administration of justice." The information was filed in our court on September 3, 1911, citation was issued October 3rd and duly served upon respondent, who filed his return November 6, 1911. As two of the members of this court, as then constituted, were honorary members of the bar association, and a doubt expressed by them as to whether they were not disqualified for that reason, counsel for the relators and the respondent, in person, filed a written waiver of any objection that might be raised to the judges named sitting in the cause. On November 13th, the parties were heard on the question of the jurisdiction of our court to entertain original proceedings for disbarment of attorneys, briefs subsequently being filed, and on November 20th our court determined that it had jurisdiction in the premises

and would proceed to hear the cause. Relators filed a reply to the return or answer of respondent and the court thereupon appointed commissioners to take the testimony and report it, with their conclusions on the facts as well as on the law, together with such recommendations as they might choose to make. George E. Smith and Charles W. Bates, Esquires, were appointed as such commissioners, and one or both of them being members of the bar association, counsel for the relators as well as respondent in person, signed and filed waivers of any objection to these gentlemen on that account. On October 29, 1912, the commissioners filed their report together with a report of the testimony taken before them and the cause was set down for argument before the court for January 15, 1913. At this date it was continued to the March term of the court and subsequently passed to the October term, at which latter term it was submitted on brief by relators and taken as submitted by respondent. While duly notified by personal service or by registered mail of the proceedings of the commissioners and of the proposed proceedings in court, as well as being furnished with a copy of the report of the commissioners, the respondent did not appear before the commissioners in the taking of testimony, nor has he appeared in court in person or by attorney since November 13th, 1911. On July 30, 1913, however, the respondent wrote letters both to the clerk of this court and to one of the commissioners, which letters are on file in the case, asking what had been done in the matter of the disbarment proceedings against him, writing that he had left St. Louis, having had an understanding with members of the bar association committee that the proceedings against him were to be dismissed. It is proper to say that there is no evidence, beyond these letters, of any such agreement, and it is specifically denied by counsel for that committee. We state these facts to show beyond any question that respon-

dent has had his "day in court" and was fully cog-
nizant and legally advised of all the proceedings
therein.

We have also set out the fact of waiver as to the
judges, that we may say of record that the waiver was
unnecessary.    Such was the ruling of the Supreme
Court in Bowman's case, 67 Mo. 146, repeated by our
court in In re Bowman, 7 Mo. App. 567, each court
holding that the fact that the judge sitting in the trial
of such case was an honorary member of the bar
association, which association is the real party pros-
ecutor, was not a disqualification, as under its by-laws
he was not liable for assessments for expenses of the
association.    That is the situation here with reference
to the members of this court who are also members
of the Bar Association of the city of St. Louis and
not called on for either dues or assessments.

There are three charges levelled against respon-
dent, in the information exhibited against him, as an
attorney and counsellor at law authorized to practice
as such in the courts of this State: First, that he, be-
ing such attorney and counsellor, improperly retained
the money of a client named and never repaid the
same until after the attorney for the Grievance Com-
mittee of the St. Louis Bar Association, in whose
hands the matter had been placed for action, commu-
nicated with respondent.    Second, that he improperly
retained the money of another client and resorted to
repeated deceptions for that purpose, writing a num-
ber of letters to his client with various excuses for the
nonpayment of the money, all of which turned out to
be false.    In this case, as in the former, respondent
remitted the money to his client but not until after
the matter had been placed in the hands of the attorney
for the Grievance Committee of the Bar Association
and he had taken up the matter with respondent.
Third, that respondent improperly retained twenty-
five dollars belonging to a client named which he has

never repaid.  The commissioners found that the testimony sustained these charges.  They found, however, on the evidence in the case, which as before said, was *ex parte,* respondent not appearing at the taking of the testimony, although duly notified, that while respondent was guilty of improperly retaining the money of his clients and of deceit in his professional capacity as attorney and counsellor at law, that there was no evidence tending to show that the improper and wrongful acts of respondent were done with any preconceived intention of wrong-doing but having improperly used the money of his clients and thereafter improperly retaining it, he was financially unable to repay it as he was bound to do, and resorted to deceit to cover up his inability to repay the money.  Their conclusion is that as a matter of law the charges are sufficient to authorize the disbarment of respondent or his suspension from practice as such attorney and counsellor for definite period of time but that under the circumstances of the case it would be a harsh judgment to absolutely and permanently disbar respondent from the practice of law in this State.  They accordingly recommend that suspension for a period of one year be adjudged against respondent as proper under the facts in the case.

It is clear that under the recent decision of our Supreme Court in State ex rel. Selleck v. Reynolds et al., Judges, 252 Mo. 369, 158 S. W. 671, this court, as a Court of Appeals, has authority to hear, determine, and adjudge, in the matter of charges against attorneys, members of the bar of this State for "any felony or infamous crime or improperly retaining his client's money or of any malpractice, deceit, or misdemeanor in his professional capacity" (Sec. 951, R. S. 1909), in an original proceeding such as this now before us. This conclusion was concurred in by all the judges of the Supreme Court save one.  It may be said, in .

passing, that our own court in In re Bowman, supra, as also in State ex rel. Jewett v. Clopton, 15 Mo. App. 589, held likewise.

While citing In re Bowman as in 7 Mo. App. 567, it is not out of place to call attention to the fact that it is not there reported in full, a mere digest of it being given. A full report of the very exhaustive and learned opinion, delivered in it by Judge BAKEWELL, with the concurrence of Judges LEWIS and HAYDEN, will be found in 8 Central Law Journal, 250. We commend it to those searching the books for light on disbarment proceedings as worthy of careful reading in full.

In the case In re Bowman, supra, and referring to it as given in 8 Central Law Journal, supra, it is held that the proceeding to disbar an attorney is not in the nature of a civil action, neither is it a criminal proceeding, but a proceeding *sui generis*. Says Judge BAKEWELL (1. c. 251), ''Its object is not the punishment of an offender, but the protection of the court; and if the removal of the attorney from his honorable, and perhaps lucrative position as an officer of the court, is of disastrous consequences to him, that is a merely incidental matter. While the power of appointing attorneys,'' says Judge BAKEWELL, ''has been constantly regulated and controlled by statute, it is a power that is not inherent in the courts, but which is, with great propriety, entrused to them, and which, in this State, and, we believe, in most of the States of the Union, is entrusted exclusively to them.'' (Now it is in the Supreme Court alone. [R. S. 1909, sec. 939.]) ''The right to remove attorneys, however, is an inherent right of the courts; it is not derived from the Legislature; and legislative enactments in regard to the removal of attorneys are merely in aid of the common law. The earliest statute on the subject is that of Westminster 1 (3 Edwd. 1, c. 29), which provides that 'if any serjeant, pleader or other do any manner of deceit or collusion in the king's court, or

consent unto it in the deceit of the court, or to beguile the court or the party, and be thereof attainted, he shall be imprisoned for a year and a day, and from thenceforth shall not be heard to plead in that court for any man.' These practices, says Coke (2 Inst. 1, 213), were against the common law, and therefore this act was made in affirmance of the common law. It is held that the courts, by their inherent power, may disbar for other causes than those specified in the statute, which is not to be construed as an enabling act, or as restrictive of the general power of the court over its officers. The doctrine must be regarded as well settled that, without the statutory provision, the right to control their officers, and to determine who shall appear before them in the capacity of attorneys, is incidental to all common law courts of general jurisdiction, as it is also necessary to the respectability of the profession.'' Many decisions from the courts of the several States, as well as Secomb's Case, 19 How. (U. S.) 9, are cited in support of this proposition.

Proceeding to the consideration of our statute, which was enacted in 1835 by Act approved February 18, 1835 (see Revised Statutes 1835, p. 90), and with a few verbal amendments not here material, is practically sections 951 to 963, both inclusive, of the Revised Statutes 1909, Judge BAKEWELL holds that our statute does not direct that the proceedings to disbar or suspend an attorney shall be in the name of the State. ''There is no arraignment, no necessity for the presence of the accused, and no punishment. The fact being that the accused is found unworthy to practice law, sentence is passed of his removal for a greater or lesser time from the bar. An attorney who had lost his wits might be so removed as unfit to practice. It would be absurd to say that his removal would be a punishment. The statute is not penal in its nature, since judgment of removal is not properly considered as a punishment (Randall's Case, 11 Allen (Mass.)

480) nor is there anything technical in the proceeding under it. Under the statute of attorneys, the court may proceed, *ex parte,* if the attorney neglects or declines to appear, but the Code of Criminal Practice prohibits conviction of an offense when the defendant is not present. An examination of the provisions of the act, which are few and simple, shows at once that the Legislature did not intend that the proceeding to disbar an attorney should be a criminal proceeding on the part of the State, or that it must be conducted by State officers, or that it should be governed by the rules of criminal practice. As we have said, it is a proceeding apart, to be governed by its own rules, and where the statute is silent, the ordinary common law practice in such cases may be adopted. No formal or technical description of the act complained of is deemed requisite to the validity of such a proceeding, nor is it necessary to the validity of the judgment that it be founded on 'due process of law' as that term is used in the bill of rights. The offender is not necessarily charged with a crime. The object of the proceeding is to determine whether he has become unfit to practice law, and to remove him from the bar if that fact is properly established. [Randall's Case, 11 Allen 479.] If the end to be obtained by removal were punishment, it would follow that one convicted of felony or misdemeanor might, if an attorney, be punished twice for the same offense. But it is not so; and in Brounsall's Case, Cowp. 289, it was held by Lord Mansfield that the fact that one had been branded as a thief, was no ground for not removing him from the bar.''

It is true that the case In re Bowman was in our court on appeal from the circuit court, but it will be observed that it falls in with the conclusion reached by six of the seven members of our Supreme Court in the Selleck case. That the line of reasoning adopted by the learned judge who wrote the opinion in the Bowman case is as applicable to a case on appeal as to

one brought originally in an appellate court, such as our court and the Supreme Court of the State, is shown by the discussion of the same proposition by Judge THOMPSON in State ex rel. Jewett v. Clopton, supra, that opinion concurred in by Judges LEWIS and BAKEWELL. A mere synopsis of it is given in the official report. The charges against that respondent were not sustained but the opinion on file contains a very full discussion of the original jurisdiction of our court in disbarment proceedings. In the opinion in that case, referring to the manuscript original on file, it appears that after holding that the right to disbar attorneys has, from the earliest times, been entrusted to the courts, and that by the practice of common law courts, it rested exclusively with the court to determine who was qualified to continue one of its officers, as an attorney or counsellor of the court, and for what cause he ought to be removed, Judge THOMPSON, quoting from State ex rel. v Laughlin, 10 Mo. App. 1, l. c. 2, says, "the power being regulated, however, by a sound and just judicial discretion, guarding the rights and independence of the bar as well as the dignity and authority of the court." It is true, as noted by Judge THOMPSON, that the decision of our court in State ex rel. v. Laughlin, supra, was disapproved by the Supreme Court in the same case, reported 73 Mo. 443, but as also noted by Judge THOMPSON, the decision of the Supreme Court in that case "does not at all impugn the above propositions. It proceeded upon a view that the St. Louis Criminal Court was not a superior court of general jurisdiction, within the meaning of the above rule, nor was it a court created by the Constitution; but that it was an inferior court of a limited jurisdiction; that, having no power to admit attorneys to the bar, who had not obtained a license to practice as attorneys in some of the superior courts designated by the statute, it had no power to entertain a proceeding to disbar them from practice. In other

words, the Supreme Court disagreed with this court merely in respect of the fact that it denied the application of the above rule to the St. Louis Criminal Court. There is no intimation in that opinion that this court does not come within the rule.''

We have quoted at some length from these two cases as learned and thorough discussions of the point referred to; that is, the nature of the proceeding and the jurisdiction of this court in the matter of disbarment. The members of this court who concurred in the decisions were, it is hardly necessary to say, conceded to be at the very head of the bar and judiciary of the State of their day. Time has not dimmed, but added luster to, their reputations as lawyers and jurists.

The majority of the Supreme Court, however, in the Selleck case held that the offenses there charged and which were there alleged to have been proven against the respondent Selleck, being felonies, indictable offenses, our court had exceeded its jurisdiction in adjudging disbarment against that respondent; this not because our court was lacking in jurisdiction to proceed when the offense charged was a felony, but because when that was the case, sections 952 to 961, Revised Statutes 1909, must be followed. We, of course, accept that as conclusive, whatever may be our own view of its correctness. An examination of our files fails to show that these sections were referred to in such a manner as to attract the attention of our court, and an examination of the opinion handed down (168 Mo. App. 391) shows they were not considered by our court. In all frankness and with due respect for the learned judges who concurred in the prevailing opinion in the Selleck case, we think it due to ourselves to say that we would be unable, if left free to use our own judgment, to treat those sections as controlling, or to place a like construction upon them, as was done in that case by the majority of our Supreme Court.

In the case before us, the offenses charged are, as found by the commissioners, not felonies, hardly even arising to the dignities of statutory misdemeanors. The nearest approach to felonies is that they possess elements of embezzlement. But they do not constitute embezzlement, for to constitute embezzlement, there must be a felonious intent at the time of the unlawful conversion to appropriate the money or property to the use of the person so appropriating it, with a fraudulent intent to deprive the owner thereof. This is elementary and is recognized to be the law of this State in many decisions, as see State v. Lentz, 184 Mo. 223, 83 S. W. 970. There, at page 239, it is said: ''The criminal intent necessary in this case is to deprive the owner of his property.'' Quoting from what is said by Judge GANTT, in State v. Silva, 130 Mo. 440, l. c. 463, 32 S. W. 1007, it is further said at page 241: ''When the agent or servant takes his employer's money with the intent to convert it to his own use without the master's knowledge, that moment he is guilty of the criminal intent denounced by the statute (covering embezzlement). . . . It suffices for the State to prove an intent on the part of the defendant to do that which the law in fact forbids.''

The commissioners in the case before us found on the evidence in the case, that evidence, to repeat, being all *ex parte*, that this felonious intent was lacking on the part of respondent here and for that reason held that he was not guilty of embezzlement. We are inclined to think that the learned commissioners, possibly applying the rule in criminal cases, that the accused is to be given the benefit of any reasonable doubt, have here put the most lenient construction possible on the acts of this respondent. But they had the witnesses before them and could better determine the force of the testimony and its weight than we can on the record, so that we accept their conclusion in the matter. It follows, accepting the conclusion of the

commissioners, that we have here no case of embezzlement, as that offense is defined by section 4553, Revised Statutes 1909, but one of improperly retaining the money of his clients and of deceit in his professional capacity. Hence it is within our power, under the decision of the Supreme Court in the Selleck case to adjudicate this case.

Accordingly, passing upon the testimony in the case, as reported by the commissioners, and accepting their conclusion, we find that the respondent, John O. Marshall, did improperly retain the money of his clients, but without felonious intent, and did practice deceit in his professional capacity as an attorney and counsellor at law.

It is therefore ordered and adjudged by the court that the respondent, John O. Marshall, an attorney and counsellor at law of this State, be and he hereby is suspended from practice as such attorney and counsellor at law in the State of Missouri for a period of one year from the date of this judgment.

It is further ordered and adjudged by the court that the relators herein have and recover of the said respondent their costs in this behalf expended and have execution therefor. *Nortoni, J.,* concurs. *Allen, J.,* not sitting.