388 Mich. 389 (1972)
200 N.W.2d 219
In re SCHLOSSBERG
v.
STATE BAR GRIEVANCE BOARD
No. 3 December Term 1971, Docket No. 53,295.
Supreme Court of Michigan.
Decided July 26, 1972.
Opinions released September 5, 1972.
Dykema, Gossett, Spencer, Goodnow & Trigg (by Donald S. Young and Michael B. Staebler), and Stephen I. Schlossberg, in propria persona, and Jordan Rossen, for plaintiff.
Peter E. O'Rourke, in propria persona.
Louis Rosenzweig, for State Bar Grievance Board.
WILLIAMS, J.
This case places one basic issue before this Court: is it an unlawful conflict of *394 interests for an attorney to act as a member of a quasi-judicial board hearing cases involving employees of a particular corporation and at the same time be a member of a law firm representing wholly-owned subsidiaries of that corporation?
This case comes to us on appeal from the State Bar Grievance Board and is Supreme Court No. 53.295. For purposes of convenience on appeal it was argued with the case of International Union, United Automobile, Aerospace & Agricultural Implement Workers of America-UAW v Governor, 388 Mich 578 (1972), brought in the Court of Appeals, which arose from the same factual situation. This opinion, however, deals only with the legal issues presented in the State Bar Grievance Board case of Schlossberg v O'Rourke, Supreme Court No. 53,295.
The Grievance Board without an evidentiary hearing rendered its opinion on the following pled facts: The law firm of Elsman, Young and O'Rourke, in which Mr. O'Rourke is a partner, derives income from its representation of certain wholly-owned subsidiaries of Chrysler Corporation,[1] namely Chrysler Financial Corporation, Chrysler Credit Corporation, and Car City Insurance *395 Company. At the same time Mr. O'Rourke did not disqualify himself as a member of the Michigan Employment Security Commission (MESC) Appeal Board in the consideration of some claims against the Chrysler Corporation brought before that quasi-judicial body. The Grievance Board concluded that such failure to disqualify himself did not as a matter of law constitute professional misconduct on the part of Mr. O'Rourke and dismissed appellant's complaint. We cannot agree.
Article 6, § 5 of our 1963 Constitution states that "[T]he supreme court shall by general rules establish, modify, amend and simplify the practice and procedure in all courts of this state." Therefore we have the implied power to regulate and discipline the Bar of this state. As early as 1850, this Court recognized and exercised its power to regulate members of our state Bar. In the Matter of Mills, An Attorney, 1 Mich 392 (1850), cited with approval in In re Hartford, 282 Mich 124 (1937).
This Court has recently adopted a new Code of Professional Responsibility, Canons and Disciplinary Rules.[2] Actions such as those with which Mr. O'Rourke is charged would constitute professional misconduct even prior to the adoption of this Code,[3] and it is alleged he has also persisted in this type of conduct subsequent to the adoption of the new Code.[4]
*396 Canon 5 reads: "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client." If as alleged Mr. O'Rourke represented Chrysler wholly-owned subsidiaries through his law firm and at the same time decided claims before the MESC involving the parent corporation, Mr. O'Rourke was serving conflicting interests. Such a situation could affect his independent professional judgment in violation of Canon 5.
Canon 9 of the Code reads: "A Lawyer Should Avoid Even the Appearance of Professional Impropriety." If, as alleged, Mr. O'Rourke failed to disqualify himself from the consideration of the MESC Appeal Board cases involving Chrysler Corporation[5] or to disassociate himself from his law firm while that firm represented the Chrysler wholly-owned subsidiaries, Chrysler Financial Corporation, Chrysler Credit Corporation and Car City Insurance Company, there would be an apparent conflict of interests and the appearance of professional impropriety. This would constitute a violation of Canon 9.
This Court has already ruled in an opinion independent of, but supportive of, the Canons that a conflict of interest of the nature of that charged to Mr. O'Rourke is a violation of a fair trial in a fair tribunal as basically required by due process. In Glass v State Highway Commissioner, 370 Mich 482 (1963), this Court held that an employee of the State Highway Commissioner should have disqualified himself from conducting a hearing on the necessity of taking certain property for highway purposes. Writing for a unanimous court, Justice EUGENE F. BLACK stated that the employee was an interested party to the extent of keeping his job by *397 implementing the highway planning of his superior, and concluded that public officials must avoid even the appearance of injustice.[6]
Canon 9 and Glass v State Highway Commissioner, supra, stand for the rule that a public employee and a lawyer cannot lawfully act in judgment where one of the parties may affect his economic interests or may have the appearance of affecting his economic interests.
As the State Highway Department employee was "an interested `person'; interested to the extent of keeping his job" it may be said that under the alleged facts Mr. O'Rourke had an interest that his firm keep or enlarge the wholly-owned Chrysler subsidiaries' retainer. This is not to say that Mr. O'Rourke was or would be tempted or that the Chrysler Corporation would or could change the retainer. The rule does not require that. The rule strictly requires that there be no appearance that such things could happen.
Justice BLACK in Glass v State Highway Commissioner, supra, 487, emphasized this rule by quoting from In re Murchison, 349 US 133, 136; 75 S Ct 623; 99 L Ed 942 (1955), as follows:
"`Such a stringent rule may some times bar trial by judges who have no actual bias and who would do their very best to weigh the scales of justice equally between contending parties. But to perform its high function in the best way "justice must satisfy the appearance of justice." Offutt v United States, 348 U.S. 11, 14 [75 S Ct 11, 99 L Ed 11 (1954)].'"
The fact that Mr. O'Rourke's law firm represented *398 Chrysler Corporation wholly-owned subsidiaries rather than the parent corporation itself does not eliminate the conflict of interest. The State Bar Grievance Board Opinion and Brief in holding that this fact makes a difference miss the big picture and the major thrust of the Canon 9  Glass v State Highway Commissioner rule by looking through the wrong end of the telescope.
That rule looks to whether Chrysler Corporation can reach, or whether there is the appearance that Chrysler Corporation can reach, Mr. O'Rourke's livelihood. The Grievance Board looks rather to whether Mr. O'Rourke can reach Chrysler Corporation through a lawsuit. Not only is this looking at the matter backwards, but certainly the facts of life are that it is a very different matter whether an outsider can pierce the corporate veil from whether the parent corporation can use its own corporate structure to accomplish its own purposes.[7]
*399 If such conflict of interests exist it can be purged in several different ways: 1) Mr. O'Rourke may disqualify himself from all cases before the MESC Appeal Board involving Chrysler Corporation or its subsidiaries; 2) he may disassociate himself from the law firm of Elsman, Young and O'Rourke; 3) the law firm of Elsman, Young and O'Rourke may terminate its legal representation of the various Chrysler subsidiaries. Any of these three alternatives would terminate the conflict of interests.
In passing, we note that the appellant's other allegations are either moot or without sufficient merit to require consideration at this time.
The order of the Grievance Board dismissing the complaint and request for investigation is reversed. The Grievance Board is instructed to proceed under Rule 15 to conduct such hearing and *400 examine such proofs as appropriate and test whatever decision it decides to render in light of this opinion and the authorities cited, namely Canons 5 and 9, and Glass v State Highway Commissioner, supra, Offutt v United States, supra, and In re Murchison, supra.
Reversed and remanded pursuant to instructions contained herein. Costs to abide final result in this case.
T.M. KAVANAGH, C.J., and T.G. KAVANAGH, and SWAINSON, JJ., concurred with WILLIAMS, J.
BLACK, J. (for order of remand with instructions).
I agree that the majority has laid down correctly the legal principles that should be applied to the conduct of defendant O'Rourke as charged by plaintiff and denied by defendant, provided those charges or some controlling portion thereof come to substantiation "by a preponderance of the evidence" as in State Bar Grievance Rule 15.13 provided (383 Mich xlvii-lxv). But those charges have not as yet been heard upon what I believe are necessary proofs. Accordingly, I find myself in agreement with Justice T.E. BRENNAN'S criticism that Mr. O'Rourke has not as yet been accorded that hearing which due process requires.
Defendant O'Rourke's counsel forensically concludes his brief, with no traverse by any original party or party amicus:
"In the Appellants' Brief is the suggestion that not only should the determination of the Court of Appeals be reversed and not only should the action of the grievance administrator be reversed, but also that this Honorable Court, without even affording an opportunity to the Appellee to have his `day in court', should grant relief in both causes, to-wit, the issuance of a Writ of *401 Superintending Control and the issuance of at least a reprimand for the Appellee's supposed unethical conduct."
Counsel went on to say that "such a procedure would constitute just about as blatant a disregard of due process as might be imagined." It is true that the complaint and request for investigation Mr. Schlossberg filed against Mr. O'Rourke was disposed of upon pleadings and that no hearing with proof, within Rule 15, has yet been conducted.[*] Rule 15 makes plenary provision for such a hearing. Upon the record as it came before the Grievance Board that tribunal should not have dismissed the complaint, nor should the Board have proceeded upon its introductory premise that "The facts giving rise to this complaint are largely undisputed."
The plethora of letters and other items of factual charges and denials the contenders have filed since oral argument suggest clearly that the facts are not "largely" undisputed.
The Grievance Board should have insisted upon conduct and conclusion of an evidentiary hearing pursuant to the procedures Rule 15 provides. In these circumstances I would enter an order reversing dismissal with instruction that the Grievance Board, upon due resolution of all disputed facts, test whatever decision the Board decides to render in light of the authorities cited in Justice WILLIAMS' opinion, namely Glass v State Highway Com'r, 370 Mich 482 (1963), the latter applying *402 and following Offutt v United States, 348 US 11; 75 S Ct 11; 99 L Ed 11 (1954) and In re Murchison, 349 US 133; 75 S Ct 623; 99 L Ed 942 (1955).
ADAMS, J., concurred with BLACK, J.
T.E. BRENNAN, J. (dissenting).
I dissent for three reasons.
Procedural Error
In the recent decision of Leitman v State Bar Grievance Board, 387 Mich 596 (1972), this Court held that no right of direct appeal lies to review an administrative dismissal by the Grievance Board of charges against an attorney. This case should have been entitled Schlossberg v State Bar Grievance Board. The existence of charges of professional misconduct against an attorney should not be made public in our Reports until after a public hearing before a hearing panel appointed by the Grievance Board.
Misconstruction or Nonconstruction of Statute.
My Brothers do not even consider the statute under which the appellee was appointed.
The appellee is Chairman of the Michigan Employment Security Appeal Board.
The statute controlling the appointment, qualifications and removal of members of that Board is MCLA 421.35; MSA 17.537. It provides:
"Sec. 35. * * *
"There is hereby created an appeal board of 3 members to be appointed by the governor, with the advice and consent of the senate, for terms of 6 years each, except that a vacancy shall be filled in the same manner *403 as is provided for appointment in the first instance for the unexpired term. If a vacancy shall occur, by virtue of the expiration of the term of a member, such member shall continue in office until his successor has been appointed by the governor and confirmed by the senate. The governor may at any time, after notice and hearing, remove any member for cause. No member of the appeal board shall participate in any case in which he is an interested party. Members of the appeal board shall receive $18,500.00 per year, except that the member designated as chairman shall receive $19,000.00 per year. Each member of the board shall devote full time to the functions of the board. Each member shall, therefore, personally perform the duties of his office during the hours generally worked by other officers and employees of the executive department of the state. Members shall be entitled to actual and necessary expenses incurred in the discharge of their official duties. Such salaries and expenses shall be paid from the administration fund." (Emphasis added.)
It is noted first of all that members of the Appeal Board are not required to be lawyers. And if members of that Board are considered quasi-judicial officers for some purposes, it must be remembered that they are primarily administrative officers. They are part of the executive, not the judicial branch of government. They are engaged in the administration of a specific piece of legislation. Hearings before the Appeal Board are not judicial proceedings.
The Employment Security Commission, its referees and Appeal Board are all creatures of statute.
There are four members of the Commission itself. Not more than two are to be members of the same political party. Two members represent employer interests, two members represent employee interests. The Commission makes initial determinations of eligibility for unemployment benefits. The Commission appoints an adequate number of *404 impartial referees to hear and decide appeals from redeterminations issued by the Commission.
The statute provides (MCLA 421.33; MSA 17.535) that no referee shall participate in any case in which he shall have a direct or indirect interest.
The Governor, with the advice and consent of the Senate, appoints the members of the Appeal Board. The statutory test of qualification of Appeal Board members is not the balanced bias of commission members, nor the strict impartiality of the referees.
The language "direct or indirect interest" is not applied to board members. Rather, the statute provides that no member of the Appeal Board shall participate in any case in which he is an interested party.
The phrase "interested party" is not defined in the statute. Its meaning, however, should be perfectly clear, as it is used in the statute, because the phrase is repeated in the employment security act many times. In fact, the phrases "interested party", "interested parties", and "parties interested" appear no less than 14 times in sections 421.32 through 421.37, and are used 3 times in section 421.35.
It is perfectly clear that the statute uses "interested party" to describe those persons who have an actual, direct involvement in the proceedings. The "interested parties" are entitled to notices, to hearings, to lodge objections and request review of decisions.
No one has alleged in these proceedings that Mr. O'Rourke ever sat in a case in which he was an interested party.
Thus he sits as a member of the Appeal Board, *405 an appointee of the executive branch of government, in full compliance with and in obedience to the statute which creates and defines his office.
Nothing in that statute prohibits him from remaining an active member of the Bar.
Misapplication of Canons of Ethics.
My Brother's opinion cites two Canons of the new Code of Professional Responsibility as being violated by the appellee. In both cases only the Canon, and not the Disciplinary Rule is quoted. One important goal of the Code was to spell out lawyers' professional responsibilities in such manner as to permit enforcement consistent with the requirements of due process of law. A code which consisted solely of the broad statements of principles contained in the Canons quoted by my Brother would be subject to attack based upon unconstitutional vagueness.
The purpose, therefore, of the Disciplinary Rules of the Code is to define standards of professional conduct which can be made the basis of discipline, suspension or disbarment.
The Preliminary Statement, published by the American Bar Association's Special Committee on Evaluation of Ethical Standards, in connection with the Code of Professional Responsibility, sets out the following description of the Canons, the Ethical Considerations and the Disciplinary Rules, the functions of each, and the relationship between them:
"The Canons are statements of axiomatic norms, expressing in general terms the standards of professional conduct expected of lawyers in their relationships with the public, with the legal system, and with *406 the legal profession. They embody the general concepts from which the Ethical Considerations and the Disciplinary Rules are derived.
"The Ethical Considerations are aspirational in character and represent the objectives toward which every member of the profession should strive. They constitute a body of principles upon which the lawyer can rely for guidance in many specific situations.
"The Disciplinary Rules, unlike the Ethical Considerations, are mandatory in character. The Disciplinary Rules state the minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. Within the framework of fair trial, the Disciplinary Rules should be uniformly applied to all lawyers, regardless of the nature of their professional activities. The Code makes no attempt to prescribe either disciplinary procedures or penalties for violation of a Disciplinary Rule, nor does it undertake to define standards for civil liability of lawyers for professional conduct. The severity of judgment against one found guilty of violating a Disciplinary Rule should be determined by the character of the offense and the attendant circumstances. An enforcing agency, in applying the Disciplinary Rules, may find interpretive guidance in the basic principles embodied in the Canons and in the objectives reflected in the Ethical Considerations."
No Disciplinary Rule is cited in connection with my Brother's reference to Canon 5. None are applicable. All of the Disciplinary Rules under Canon 5 deal with a lawyer's representation of his clients. None of them deal with a lawyer's responsibility as a public officer.
The Disciplinary Rules promulgated in connection with Canon 9 are DR 9-101, dealing with the appearance of impropriety, and DR 9-102, dealing with custody of clients' funds and property. Obviously DR 9-102 is not involved here.
DR 9-101 provides:
*407 "DR 9-101 AVOIDING EVEN THE APPEARANCE OF IMPROPRIETY.
"(A) A lawyer shall not accept private employment in a matter upon the merits of which he has acted in a judicial capacity.
"(B) A lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.
"(C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official."
Paragraphs A and B both use the words "* * * private employment in a matter * * *."
There has never been any claim that Mr. O'Rourke ever accepted private employment in any matter in which he had acted in a judicial capacity or in respect to which he has had any responsibility as a public official.
No violation of paragraph DR 9-101(C) has been suggested in these proceedings.
If the new Code of Professional Responsibility is to achieve its laudable purpose, it should be understood and used in accordance with its terms. A formal complaint by the Grievance Board should reference the specific Disciplinary Rule which it claims has been violated.
For this Court to tolerate, much less encourage, the practice of disciplining lawyers for unspecified violations of the general ethical aims of the Canons, without reference to the Disciplinary Rules, is a grave mistake.
One final point. Glass v State Highway Commissioner, 370 Mich 482 (1963), has no application to this case. In Glass v State Highway Commissioner, the appellant was a property owner who challenged the refusal of a highway employee, one Hart, to disqualify himself from certain condemnation proceedings. A proper and timely demand for *408 the disqualification was made and refused. The appeal was on review of the determination of necessity for taking the appellant's lands. This Court reversed and remanded for entry of an order of disqualification.
In Glass we were not considering any punishment of the Highway employee, Hart. The record does not disclose whether he was a lawyer. It is doubtful that he would have been disbarred for his refusal to disqualify himself.
GCR 1963, 405.2 contemplates disqualification of a judge upon motion before another judge, but it nowhere suggests that the disqualified judge is ipso facto guilty of misconduct in office for refusing to disqualify himself.
The proposed discipline of the appellee here, for refusal to disqualify himself, even if that disqualification be mandated by Glass, is the equivalent of suspending a judge from office because he is reversed on appeal.
I would sustain the action of the State Bar Grievance Board.
NOTES
[1] It appears from the appendices to the complaint in Supreme Court No. 53,217 incorporated by reference in the complaint or request for investigation in this case that Mr. O'Rourke himself was attorney of record in cases involving the Chrysler Corporation subsidiaries.

As to the wholly-owned character of the Chrysler subsidiaries the referenced complaint (Supreme Court No. 53,217) alleges "Chrysler Financial Corporation is a wholly-owned subsidiary of Chrysler. Car City Insurance Company and Chrysler Credit Corporation are wholly-owned subsidiaries of Chrysler Financial Corporation." In support thereof there is attached to the brief in No. 53,217 a portion of the Chrysler Corporation 45th Annual Report, December 31, 1969, which includes a Touche Ross & Co. CPA report stating "[w]e have examined the accompanying consolidated balance sheet of Chrysler Financial Corporation (wholly-owned subsidiary of Chrysler Corporation) * * *" and a reference to Car City Insurance Company as a wholly-owned subsidiary of Chrysler Financial Corporation.
[2] The Code was adopted by this Court on October 4, 1971, and was given immediate effect. The Code is set out in 385 Mich Ivi-xc (1971).
[3] See Canons of Professional Ethics, Canon 6, and Canons of Judicial Ethics, Canons 4 and 24 in Honigman & Hawkins Michigan Court Rules (1969 ed).
[4] Mr. O'Rourke participated in the decisions in the cases of Claim of Russell and Chrysler Corporation, App. Docket No. B71-5510-39962, decided November 17, 1971, and Claim of Debucce and Chrysler Corporation, App. Docket No. B71-1104-39565, decided October 11, 1971.
[5] Mr. O'Rourke was requested to disqualify himself, but refused to do so in the case of Taylor and Chrysler Corporation which was before the MESC Appeal Board.
[6] The Supreme Judicial Court of Massachusetts in Beauregard v Dailey, 294 Mass 315; 1 NE2d 481 (1936), held a lawyer serving as a master in a labor dispute should have disqualified himself as he was also attorney of record for one of the parties in an unrelated tort action.
[7] "In determining whether the corporate entity should be disregarded * * *", Justice BUTZEL emphasized the recognized rule that "each case is sui generis and must be decided in accordance with its own underlying facts." Herman v Mobile Homes Corp, 317 Mich 233, 243 (1947).

The facts in the O'Rourke case relate to whether an attorney who is also a public employee violated a professional or public trust. It is a question of ethics and public policy.
Gledhill v Fisher & Co, 272 Mich 353 (1935), cited by the Grievance Board relates to whether an owning corporation is liable to a contractor with an owned corporation. These facts obviously bear no similarity to the O'Rourke case. Furthermore, in the Gledhill case plaintiff had not even known of the existence of the owning corporation when it dealt with the owned corporation. Mr. O'Rourke's relationship with Chrysler Corporation, if that fact were in any way material, was known and protested before the MESC Appeal Board. Incidentally, the Mobile Homes case, supra, considered the Gledhill case and distinguished it from the agency situation in its own facts and found liability.
Burrows v Emery, 285 Mich 86 (1938), relates to whether an individual stockholder in a corporation buying and selling securities was liable for assessment on bank stock held by the securities corporation. These facts equally obviously bear no similarity to the O'Rourke case.
More nearly in point are public rate cases such as People, ex rel. Attorney General, v Michigan Bell Telephone Co, 246 Mich 198 (1929), where the agency relation between American Bell Telephone and Michigan Bell Telephone was considered, and without regard to fraud the separate corporate entity theory was disregarded or Chicago, M & S P R Co v Minneapolis Civic & Commerce Ass'n, 247 US 490; 38 S Ct 533; 61 L Ed 1229; (1918), in which certain railroads owned a terminal railway company, and it was held that an agency relation existed. The United States Supreme Court said:
"In such a case the courts will not permit themselves to be blinded or deceived by mere forms or law but, regardless of fictions, will deal with the substance of the transaction involved as if the corporate agency did not exist and as the justice of the case may require." 247 US 490, 501.
See also Pfaffenberger v Pavilion Restaurant Co, 352 Mich 1 (1958); Acton Plumbing & Heating Co v Jared Builders, Inc, 368 Mich 626 (1962); Annotation: Disregarding corporate existence, 34 ALR 597, 599.
In Detroit Board of Education v Getz, 321 Mich 676, 678 (1948), we said:
"The interest which will thus disqualify a judge must be such an interest in the subject matter that he will be directly affected through pecuniary or property gain or loss."
As shown supra this Court in Glass v State Highway Commissioner, 370 Mich 482 (1963) held that keeping a job is such "pecuniary or property gain or loss." As we have shown this is what is involved in this O'Rourke case.
[*] I do not say that, under Rule 15, an evidentiary hearing must be conducted as a basis for proper disposition of all complaints made under the Rule. Few complaints require such formality or disposition other than by the Administrator or, possibly, by an assigned Hearing Panel. This one though, the charges reviewed, comes fairly within and should have been processed pursuant to sections 15.8 through 15.22 as applicable.